IN RE REPORT OF D. W. ATKINSON, Administrator.

No. 40435.

1246

*Carl P. Knox* and *Gold & McCann*, for Objector, Irving Jasinsky.

*W. F. Moore,* for administrator.

KINDIG, J.—Sylvester Jasinsky died testate in Panora, Iowa, June 14, 1926. According to the inventory filed in the probate proceedings, his estate was valued at approximately $275,000.

Of that property, about $90,000 consisted of farm lands. A portion of the balance was in bank stock, distributed among the following institutions: Bayard Savings Bank, Yale Savings Bank, Jamaica Savings Bank, and First National Bank of Bagley. These are all Iowa business concerns. The balance of the assets belonging to the estate was notes signed by farmers who lived in the vicinity of the aforesaid banks.

Through his will, the decedent divided the foregoing property in this manner: One fifth to a brother, Gideon Jasinsky; one fifth to a sister, Julia Faucett; one fifth to a sister, Hester Hatcher; one fifth to a sister, Eliza Corwine; one tenth to Royal Jasinsky, a nephew; and one tenth to the appellant, Irving Jasinsky, also a nephew. Joint administrators with the will annexed were appointed by the court to take charge of the estate. They were the appellee D. W. Atkinson and R. E. Caslow.

It appears that the appellee, D. W. Atkinson, assumed active management of the estate. However, in so doing, he counseled and advised on all matters with his co-administrator, R. E. Caslow. During the course of the administration, the appellee, as managing administrator, filed an amended report with the district court clerk in May, 1929. To this report, appellant filed many objections. One was wholly, and another partly, sustained, and all the others were overruled. Judgment was entered accordingly on December 26, 1929. From that judgment objector appeals.

For convenience, the objections interposed by appellant may be divided into two general parts: First, those passed upon by the Honorable W. S. Cooper, district judge; and second, those disposed of by the Honorable J. H. Applegate, district judge.

. I. Attention is first directed to the matters decided by Judge Cooper. Included in that portion of the controversy are objections to the following items in the report: First, the disbursement of $200 to D. W. Atkinson, administrator, for special fees relating to the Bagley  bank settlement; second, the payment of $14,500 attorney fees to W. F. Moore; third, the allowance of $250 special attorney fees for the reorganization of the Bagley bank; fourth, the expenditure of certain moneys on a Duncan farm transaction; and fifth, the retention of $1,500 by D. W. Atkinson, as administrator,

for special services rendered the estate. Thus these particular items are referred to in the record.

As already has been indicated, the Honorable W. S. Cooper heard these particular controversies and decided them. Likewise, Judge Cooper entered judgment thereon. Appellant, however, appealed only from the judgment of the Honorable J. H. Applegate, district judge. This judgment entered by Judge Applegate was under date of December 26, 1929, as before indicated, while that of Judge Cooper was rendered November 16, 1929. Obviously, the judgments are separate and distinct. In order, then, to bring before this court the judgment entered by Judge Cooper, an appropriate notice of appeal was essential. No such notice was served; for, as before stated, the notice of appeal referred to and included only the judgment entered by Judge Applegate. Consequently, the judgment rendered by Judge Cooper is not before us, and the matters therein decided will not be reviewed at this time.

II. Numerous items of appellant's complaint attacking the administrators' amended and substituted report were presented to the Honorable J. H. Applegate, district judge. Chronologically, those exceptions will now be named and discussed.

First: On June 30, 1926, $150 was disbursed to D. W. Atkinson, the administrator, for fees and expenses in caring for business before the death of Sylvester Jasinsky. Complaint was  made because the administrator Atkinson is alleged to have passed upon his own claim, allowed it, and paid the sum thus involved to himself. Two reasons are given by the appellant for the invalidity of this act. One objection is that the claim was not filed in writing. Therefore, appellant argues, the same could not properly have been paid. Manifestly, this position cannot be sustained. If the claim is just, it may be allowed, although not filed. We said in *In re Estate of Harsh*, 207 Iowa 84, on page 88:

"The filing of his claim by a creditor, or the allowance thereof by the court, is not made a condition precedent to the authority of the administrator to approve and pay it. The administrator may voluntarily pay valid claims against the estate,

though they are not filed, and having paid them, is entitled to credit therefor.''

Here, as in the *Harsh* case, the claim, under the testimony submitted, was just and valid, and consequently was properly allowed and paid.

The second objection interposed by appellant is that the administrator could not legally pass upon and allow his own claim. Another administrator, specially appointed for the purpose, should have passed upon the alleged indebtedness, appellant urges. Consultation between appellee and his co-administrator was had over all matters involved in the estate, and the heirs, including appellant, according to the record, ratified, approved, and asked that the particular claim be allowed and paid. Under the circumstances, then, the district court did not err in approving this item of the report.

Second: $400 was paid by the administrator as a premium on the administrator's bond. On this bond, the Fidelity & Casualty Company of New York is the surety. Apparently  Atkinson, the administrator, is agent for the surety company. Hence it is concluded by the appellant that the premium was illegally paid, because the administrator would receive a certain commission therefrom.

Continuing his complaint, the appellant says that the effect of the transaction was that Atkinson was representing two principals: First, the estate, and second, the surety company. As authority for the condemnation of such practice, appellant cites *Rasmussen v. Hansen*, 176 Iowa 26, and *Bowers & King v. Roth*, 189 Iowa 1264. Both of those cases involve the sale of real estate, where the agent acted in a double capacity, without the knowledge of either principal that such duplicity was being practiced. Before us is an entirely different set of facts, because here there is no duplicity, in the sense condemned in the above-cited cases. A surety bond was necessary. Everyone connected with the estate fully understood that. No objection was made because a surety bond was furnished. Neither does it appear that the premium charged for this bond was excessive, or any more than any other surety company would have charged. Premiums for bonds of this nature are so uniform and fixed that

the rates are generally understood. So there was no competition between the surety company and the estate for an advantageous rate on this bond. Such a transaction does not present a case where an administrator cannot receive credit for a claim of the kind in question, and the district court did not abuse its discretion in approving this part of the report.

Third: $100 was paid by Atkinson, as administrator, to cover insurance premiums on farm buildings located on land belonging to the estate. An objection is made by the appellant to this item of expenditure because the beneficiaries under the will, and not the administrator, had charge of the real estate. It is maintained, therefore, that the administrator had no jurisdiction over the real estate, and consequently had no right to insure the buildings thereon. Section 11952 of the 1927 Code provides:

"If there is no heir or devisee present and competent to take possession of the real estate left by the decedent, the executor or administrator may do so, and demand and receive the rents and profits, and do all other acts relating thereto which may be for the benefit of the persons entitled to the same."

According to the record, the heirs and devisees were nonresidents of the counties where the land was located. Moreover, there was a will contest, the result of which was appealed to this court. Thereby considerable time was consumed in settling the controversy. During that period, the beneficiaries were not in charge of the real estate, nor does it appear that they came into possession thereof until after this insurance was contracted for. March 28, 1927, after Sylvester Jasinsky's death, the administrator paid out the insurance money in question. Clearly, the administrator, when he incurred the indebtedness under consideration, acted for the protection and benefit of the beneficiaries, including appellant, and proceeded within the purview of Section 11952, supra. There was no one else in charge of the land at the time, and the insurance would have lapsed, had it not been for the act of the administrator. Error does not appear, therefore, because the district court approved this part of the administrators' report.

Fourth: Two items in the report relate to disbursements

by the administrator to the Iowa Loan & Trust Company and the Continental & Commercial National Bank of Chicago. These expenditures were in the amounts of $10,867.23  and $22,180, respectively. Those payments were made for the purpose of satisfying promissory notes guaranteed by Sylvester Jasinsky during his lifetime. Exception is taken by appellant to those expenditures for the reason, it appears, that co-guarantors of the instruments were F. M. Hopkins, C. W. Cain, H. L. Moore, and W. F. Moore, and these last-named persons have not paid their portion of the indebtedness. Some controversy appears regarding whether the said co-guarantors have made full contribution for their portion of the obligations. Upon this subject, there is testimony indicating that the so-called co-obligors have made full contribution, but whether they have or not is quite immaterial for the purposes of this discussion; for, as originally stated, the decedent was liable upon the instruments, and the debts represented thereby were properly paid by the administrator. If there is to be further contribution from the co-signers that can be obtained during the course of the administration, and should the administrator fail to act in the premises, the appellant, under the statute, has a full and complete remedy. This objection was properly overruled by the district court.

Fifth: $500 was paid by the administrator to W. F. Moore, attorney for the estate, as a partial payment of attorney fees. Again an attack is made upon the administrator's action in this  regard. The basis for this objection is that the co-administrator, Mr. Caslow, paid Mr. Moore the $500, and appellant alleges that the administrator D. W. Atkinson did not make a sufficient investigation concerning the reason for the payment. Without such investigation, appellant maintains, the administrator's account should not be credited with the expenditure. Mr. Moore was attorney for the estate at the time he received the partial compensation, and the estate owned much property, including banks, during a period when institutions of that character needed careful and constant attention. Compensation was earned by Mr. Moore in his duties as such attorney, and, under the record, it seems that there was nothing unreason-

able or unjust in the allowance of the partial payment under consideration. Such amounts paid from time to time on attorney fees will, of course, be taken into consideration when the final payment is made. Plainly the district court did not err in approving this item of the report.

Sixth: $825 was claimed by the administrator for traveling expenses, including the use of an automobile. Appellant insists that the amount is exorbitant, and claims that the administrator Atkinson testified as follows:

"In other words, when I drew $75 from the estate, that meant I had driven my automobile for the estate enough to warrant taking the $75."

From this testimony, appellant argues that the $75 should cover all the expenses for traveling. Of course, in considering the subject, attention must be given to the entire record, rather  than to a single sentence of the administrator's testimony. It apparently was the practice of the administrator to draw $75 when his expenses amounted to that much. A great deal of traveling was necessary, for the banks were located in different towns, thus necessitating the use of an automobile. In view of the necessary attention required by the banks, the work involved in collecting many notes, and the volume of the business transacted, it is apparent, after a careful reading of the record, that the item was not exorbitant, and was properly allowed by the district court.

Seventh: On July 14, 1926, the administrator paid $3,500 to the First National Bank of Bagley, and the appellant complains thereof. Sylvester Jasinsky owned 35 shares of stock in  the Bagley bank. That bank, it appears, was having financial difficulty to the extent that it was necessary to reorganize or close. Had the bank closed, the stockholders would have been liable for the statutory assessment. So it was thought best to reorganize the bank and avoid the closing and loss incident to such an event. To reorganize, it was desirable that stockholders pay voluntary assessments. For the purpose of meeting the voluntary assessment, the administrator paid the $3,500 on behalf of the estate.

Obviously, great advantage accrued to the estate through the re-organization, because the estate owned many notes the makers of which were in the community of the Bagley bank. Likewise, the estate owned many farms in the same neighborhood. Because the bank did not actually close, and no assessment was, in fact, levied, the appellant says the payment should not have been made. He also complains because there was no formal resolution of the board of directors concerning the alleged assessment.

By doing this, the appellant loses sight of the purpose of the administrator and other stockholders in reorganizing the bank. Their intention in that regard was, not to pay an assessment actually levied, but to pay the equivalent of the assessment which these stockholders thought would be levied in case the bank closed, for the purpose, not of liquidation, but of continuing the institution as a going concern. Undoubtedly, the administrator was justified in taking this action and making the payment, under the circumstances. Indirectly, the estate received great benefit from this transaction. Hence, this item of the report was properly allowed.

Eighth: $1,500 was paid by the administrator to the First National Bank of Bagley for a note indorsed by Sylvester Jasinsky during his lifetime. Personal liability for the indebtedness was fixed upon the decedent by the written in-strument. Exception is taken to that action of the administrator's because he did not know for what the $1,500 note had been given. That is to say, appellant contends that the administrator should not have credit for the payment because he did not know the circumstances under which the original note was made. There is no question that the note in fact was signed by Sylvester Jasinsky during his lifetime, and was an unpaid obligation of the estate. Necessarily, then, the decedent's estate was liable for the indebtedness, and the administrator was compelled, under the law, to allow and pay the same. Manifestly, the district court did not err in allowing this item of the report.

Ninth: As shown by the record, the administrators purchased three notes from the Yale Savings Bank. In the aggregate, these notes amounted to $5,556.70. One of the notes was

1254

 signed by R. E. Caslow, the administrator, Jasinsky, the decedent, and W. F. Moore. Objection is made by the appellant to that expenditure by the administrator D. W. Atkinson because it is said there was no necessity for such an outlay of money. Explanation is made by the administrators that there was a run on the Yale bank, in which the estate was interested, both as a stockholder and a depositor. Ready cash was essential to save the institution. To accomplish this, the aforesaid purchases were made, and, as a result, the institution withstood the threatened catastrophe. All the notes have been collected except the one signed by Caslow. Contribution from Caslow still may be obtained by the administrator Atkinson, or proper adjustment made of the account during the remaining administration of the estate, if it has not already been done. Nothing improper appears because the administrators purchased these notes, and on the other hand, a benefit accrued to the estate. Resultantly, the item was properly approved by the district court.

Tenth: The People's Savings Bank of Guthrie Center was paid $3,800 by the administrator. This payment was the amount due on a promissory note. Said note was signed by Sylvester  Jasinsky, Charles Cain, W. F. Moore, and H. L. Moore. Complaint is made on the theory that the record does not show what the note was for, and furthermore, others liable on the note have not paid their proportionate share thereof. So far as the first proposition is concerned, it is plain that the note was signed by the decedent, and consequently existed as an obligation against the estate. Under the circumstances, the administrator correctly paid the debt. With respect to the second proposition, it is enough to say that contribution from the co-obligors on the note still can be obtained by the administrator, if the same has not already been made. The estate is still open, and if the administrator does not do his duty in respect to compelling such contribution, the appellant has a complete remedy under the statute. No error appears because the district court approved the report in this respect.

Eleventh: $558.89 was drawn by the administrator to apply on his statutory fees. Upon the receipt thereof, the adminis-

trator used the funds for the purpose of retiring a note which  he himself owed the estate. It is claimed by the appellant that interest was not paid on the note; also, that the administrator should have borrowed the funds from some outside source, in order to pay the indebtedness to the bank. If the administrator has not paid all the interest due on the note, the same still can be collected in the due course of the administration, before the final report is approved and the administrators discharged. Clearly, under the circumstances, it was not necessary for the administrator to go through the unnecessary performance of borrowing money for the purpose of paying his obligation to the estate. Statutory fees were partially due. That being true, no good reason appears why it was not perfectly proper for a partial allowance thereof to be made at the time in question. When once allowed, the statutory fees belonged to the administrator, and he was entirely within his rights when he used the same for the retirement of his own obligation to this estate. We see no reason to reverse the district court because it allowed this item of the report.

Twelfth: A claim was made by the administrator for $371.11, costs advanced in a certain suit. In its findings of fact, the court below stated:

"On this hearing, the only credit the administrator is entitled to is the sum of $13.50. The remainder of said item is not in this report shown to have been properly expended, and so  same is referred back to the administrator with direction to properly report on any items claimed to have been intended to have been covered in a subsequent report. It is not at this time shown that other items intended to have been covered by the remainder of said $371.11 is or will be a proper charge against said estate. But when properly met or paid, it will then be time to consider said matters."

Then, in the judgment, the court, in harmony with the above finding, declared:

"The item of $371.11, being the payment to W. F. Moore and A. D. Sayre for costs, does not show proper vouchers or pay-

ments, and the same is hereby continued for showing on final report.''

Ignoring the court's finding and the judgment entered thereon, the appellant argues the proposition as if the same were here now for final determination. As the subject of the present discussion was not passed upon by the district court, but continued for consideration in the administrators' final report, we are not at this time in a position to dispose thereof, nor can we say that the district court abused its discretion in thus continuing the controversy.

Consideration has been given to all the propositions argued by the appellant, and, after such consideration, we are constrained to hold that the judgment of the district court should be affirmed. Accordingly, it is affirmed.—*Affirmed.*

MORLING, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.