IN RE ESTATE OF FRED F. CARPENTER.

PETER SLYCORD et al., Appellants, v. MINA A. CARPENTER, Executrix, Appellee.

No. 45894.

AUGUST 11, 1942.

Thomas J. Bray, of Oskaloosa, for appellants.

Van Zante & Klyn, of Pella, and H. E. de Reus, of Knoxville, for appellee.

Van Zante & Klyn, of Pella, in their own behalf as appellees.

BLISS, J.—This appeal, and another separate appeal, entitled In re Estate of Carpenter, reported in 232 Iowa 919, 5 N. W. 2d 175, involve rulings of the court in estate matters presented separately both in the trial court and in this court. Some matters of procedure and of fact form a background in

both appeals which throw some light on the issues involved, and we set them out here to avoid repetition in the other opinion.

· The deceased was a physician and surgeon at Pella, Iowa, for many years. He died testate on August 6, 1939, survived by his widow, Mina A. Carpenter, 71 years old, and an only child, Freda (Carpenter) Vietor. He made his will on June 29, 1915. He first directed the payment of his just and legal debts and the administration costs. Subject to this direction, he next made a "special bequest" to his wife, in the sum of $2,000, with interest thereon at 6 per cent per annum from March 1, 1911, " to cover a loan made to me by my said wife." Subject to the direction to pay his debts and to the bequest to his wife, he directed that his wife should have the income, use, and control of the remainder of his entire estate. In the event his wife remarried, he directed that after the payment of his debts and the special bequest to his wife, the remainder of his entire estate should be divided equally between his widow and his daughter. The will was probated on August 30, 1939, and the widow was appointed ·executrix and qualified as such on that day. On September 7, 1939, she filed proof of the posting of notice of her appointment as executrix.

It appears from the record that the widow, who had little business experience, was not fully informed either as to the liabilities of her husband or the worth of his assets. His books of account, like those of many country doctors, contained thousands of dollars of uncollected and uncollectible accounts. These totaled about $18,000. Investments in stocks and bonds and Florida real estate were of little value. The family homestead · was worth about $5,000. The estate was about 40 per cent solvent. On September 8, 1939, the widow filed her application for a widow's allowance, in which she stated that the indebtedness of the estate was approximately $2,000, not including the indebtedness to herself mentioned in her husband's will. Judge Dingwell, in the order allowing her a widow's allowance of $125 a month, found that she had no means of support, and that the estate amounted to approximately $17,000, including the homestead, and that the debts were approximately $2,000, not including the $2,000 with interest at 6 per cent from March 1, 1911, for which the estate was indebted to the widow.

On September 8, 1939, the executrix filed a report and application to sell the office equipment and the automobile of the deceased and the small stock of drugs which he kept for use in his practice. The application was granted on the same day. On January 29, 1940, the executrix made application to the court to have set aside to her all the real and personal property which would have been exempt to the deceased as the head of a family, or the proceeds of the sale thereof. The application was granted by Judge Dingwell.

In January 1940, the appellant, Peter Slycord, filed his claim on a note of decedent for $6,000, with interest at 6 per cent, dated April 8, 1931. In this month James Slycord filed his claim on a promissory note of decedent for $362.50, made by decedent in 1931. After some controversy over the amount of the offset, it was reduced and compromised at $1,925.50, and the claim of Peter Slycord was allowed, on December 13, 1940, as a claim of the third class, for a balance of $7,508.13, and, after crediting an offset of $283, the claim of James Slycord was allowed as third class in the sum of $234.32.

In their objections to the final report, and in the trial court, the appellants contended that the widow had not filed a refusal to take under the will and for that reason was not entitled to claim and take the exempt personal property set aside to her. Such contention is not raised or argued in this court.

Appellants assign three errors. First, that the stock of drugs in the office of the deceased at the time of his death was not exempt property, and the executrix should have been required to account for the $100 which Judge Dingwell awarded her as the proceeds of the sale of the drugs. The trial court overruled the objection. The record before us does not disclose the character of this small stock. Whether it included anesthetics, antiseptics, or dressings does not appear. But one witness, apparently, testified about this matter. Dr. Cornell, a local doctor, testified that he knew the deceased intimately and had been in his office on various occasions, and that the drugs were not kept for sale but were dispensed in connection with his services, and that such was the custom of doctors in that community, and that unless a prescription was given by the

doctors, drugs of that nature were a necessary part of the practice of the doctors in that county, and that the drugs were given away as a part of the doctor's service. These medicines were either used by the doctor directly in treating the patient or given to the patient to use, and included in the call charge of the doctor. The trial court, under the record made, found that the drugs were of such character and were so used by the doctor in treating his patients that they were a part of his equipment in the practice of his profession. We are not disposed to disturb this holding of the court. These articles were not kept, as a druggist keeps a stock of drugs, for sale at a profit to the general public, but were kept and used by him to better serve those who came to him for his professional aid. Appellants urge that these drugs do not come within the provisions of Code section 11760 (17). Strictly speaking, they may not be tools or instruments, as we usually think of such terms, and yet a bandage, splint, an antiseptic, something to deaden pain, or to reduce fever, an ointment, or a laxative, kept by a doctor in his office, are all instrumentalities in the practice of his profession. In Hoyer v. McBride, 202 Iowa 1278, 211 N. W. 847, we held that hair tonic and shampoo in reasonable quantities were exempt to a barber in the practice of his trade, and yet they are not tools or instruments in the sense that his razors and shears are.

 Secondly, the appellants assign error because the executrix paid Marie Van Vark $536.25 in the settlement of mutual claims, though the claimant never filed her claim against the estate. The facts are these: About September 1, 1939, the executrix first learned that Mrs. Van Vark held the note of the decedent on which there was then due $3,057. Mrs. Van Vark told her that unless she was paid she would lose her home by foreclosure. The creditor and members of her family were indebted to the doctor in the aggregate sum of $1,568.75. After applying this offset, the estate owed a balance of $1,488.25. The executrix settled this balance for $536.25, which was less than the pro rata dividend which the creditor might have received on the unpaid balance of her claim. The executrix paid this sum on September 9, 1939, upon the delivery of the note, but without requiring the claim to be filed. She, at that time,

did not know whether the estate was solvent or insolvent, but she testified that she thought the doctor had enough to pay his debts. She made the payment in good faith, and neither the appellants nor anyone else was injured by the transaction. This was the judgment of the trial court. We agree with that conclusion. The transaction was irregular and was done without consultation with the attorneys for the estate, but no one suffered by it. It does not necessarily follow that because a claim against the estate of a decedent was paid without being filed the executor or administrator should not be credited with the amount of the payment. See In re Estate of Pennock, 122 Iowa 622, 98 N. W. 480; In re Estate of Plendl, 218 Iowa 103, 107, 253 N. W. 819; Elliott v. Des Moines Nat. Bk., 209 Iowa 1258, 1264, 228 N. W. 274; In re Estate of Harsh, 207 Iowa 84, 88, 218 N. W. 537; In re Estate of Atkinson, 210 Iowa 1245, 1248, 232 N. W. 640. In the cases cited, and in the case before us, the claim paid was a just and valid claim. Every material purpose of the statutes relative to the filing of claims was accomplished. It would be an injustice to compel the executrix to account to the estate for the payment to Mrs. Van Vark. Had the latter received more than her pro rata share of the assets available to creditors of the third class the appellants would have basis for their complaint, but, as said in In re Estate of Wonn, 80 Iowa 750, 754, 45 N. W. 1063, 1064:

" * * * since the spirit of the statute has been complied with, we do not think they should be permitted to profit by the omission of a technical requirement which did not in any manner prejudice their interests."

Appellants' third and last assigned error is based upon the court's allowance of $220 to Van Zante & Klyn in excess of the statutory percentage for attorneys' fees. We think the holding of the court is sustained by the record.

The executrix, in her final report, had asked that she and her attorneys be each allowed $500 for extraordinary services. The court denied her claim, but made the extra allowance noted to the estate's attorneys. We will only briefly refer to the record. The cash on hand and cash collected totaled $10,211.31. Disbursements from this amount at the time the final report

was filed left a cash balance on hand of $6,667.04. It fairly appears that much time was spent by the executrix and the attorneys in seeking to collect the many delinquent accounts of the decedent. There was much correspondence and many personal calls upon the debtors. Conferences were had with income-tax officers, both at Des Moines and at the office of the attorneys. Ten or fifteen trips were made to Knoxville. Consultations were had with the executrix while she was in the hospital at Oskaloosa. The trial court heard all of the testimony and had all of the files and estate records before it. Various applications were made to the court and hearings were had. Ordinarily, matters of this kind are largely within the reasonable discretion of the trial court. The amount allowed is not large, and we cannot fairly say that the discretion of the court has been misused. There is sufficient evidence to support the allowance, and we are not warranted in interfering with the court's finding. See In re Estate of Dehner, 230 Iowa 490, 298 N. W. 656; Glynn v. Cascade State Bk., 227 Iowa 932, 939, 289 N. W. 722.

We find no reversible error in the record, and the rulings and orders appealed from are, therefore, affirmed.—Affirmed.

All JUSTICES concur.