In re Estate of Fred F. Carpenter.

Mina A. Carpenter, Claimant, Appellant, v. Mina A. Carpenter, Executrix, et al.; James Slycord et al., Objecting Creditors, Appellees.

No. 45894.

August 11, 1942.

Rehearing Denied November 27, 1942.

H. E. de Reus, of Knoxville, for appellant.

Van Zante & Klyn, of Pella, for appellee executrix.

Thomas J. Bray, of Oskaloosa, for appellees Slycord.

Clarence A. Kading, of Knoxville, pro se.

BLISS, J.—■ In the opinion In re Estate of Fred F. Carpenter, Deceased (Peter and James Slycord v. Mina A. Carpenter, Executrix), reported in 232 Iowa 134, 5 N. W. 2d 172, we have noted some general facts which have a bearing upon the issue herein. As stated there, Fred F. Carpenter died August 6, 1939, leaving his last will, which he had executed on June 29, 1915. After providing for the payment of his obligations, and subject thereto, he bequeathed to his wife, Mina A. Carpenter, "the sum of Two Thousand Dollars ($2000.00), together with interest thereon at the rate of Six per cent per annum from the first day of March, 1911. This bequest is made to cover a loan made to me by my said wife. Further it is my will and I hereby direct that all amounts I may pay on the principal or interest of said loan, during my lifetime, shall be deducted from this Special bequest."

This acknowledgment of the loan is sufficient proof of the validity of the debt. It was not incumbent on the widow to prove its nonpayment, and the objectors made no attempt to sustain the burden of payment, which the statute placed upon them. Craig v. Craig Estate, 167 Iowa 340, 349, 149 N. W. 454.

■ The bequest was in fact worthless, since the assets of the estate were insufficient to pay its obligations. Just how soon after the decedent's death his widow fully realized this fact is not clear from the record, but early in the administration she procured orders setting off to her the property which would have been exempt to her had her husband died intestate.

On September 8, 1939, she made application for the statutory widow's allowance. At that time she had no attorney representing her personally, and the attorneys for the estate prepared this application. It stated that the only property of the estate of any real value was the homestead, worth $5,000, and household goods and furniture, automobile, cash on hand, book

accounts, and office supplies, all of an approximate value of $12,000. The fact that the widow had no property in her own right and no means of support was alleged, and the application then stated, "that your petitioner does not at this time know the extent of the indebtedness of said decedent, but is of the opinion that the indebtedness * * * consists of approximately $2,000 to outside creditors and *that said decedent was indebted to your petitioner, as set out in decedent's Last Will and Testament, on a promissory note in the sum of Two Thousand ($2,000) Dollars, together with interest thereon at the rate of six (6%) per cent per annum from the 1st day of March, 1911.*" (Italics supplied.) The prayer was for an allowance of $1,800 for a period of 12 months. The application was verified.

The application was presented to Judge Dingwell on the day it was filed, together with other applications for the sale of exempt property. An order was made which stated that after hearing statements of counsel and being fully advised the court found the application should be approved and allowed. The order then stated: "* * * the Court further finds that the said widow, Mina A. Carpenter, has no property in her own right, and no means of support and that said estate, including the homestead, amounts to approximately * * * $17,000 and that the approximate debts of said decedent will amount to approximately $2,000 to outside parties, and that in addition *said estate is indebted to said applicant in the sum of Two Thousand ($2,000) Dollars plus interest thereon at the rate of six (6%) per annum from March 1, 1911.*" (Italics supplied.) An allowance was ordered in the sum of $1,500, payable in monthly installments of $125.

Upon the application of Peter Slycord, the executrix was ordered to report upon the estate. A very full report was filed by the executrix on October 16, 1940, setting out her official doings, and the receipts and disbursements, and claims filed. In the report was this statement:

"That said decedent, * * * was indebted to the said Mina A. Carpenter in the sum of Two Thousand ($2,000) Dollars, which the said Mina A. Carpenter had inherited and which was loaned to the said Fred F. Carpenter on or about March 1,

1911. Said indebtedness being set out in decedent's Last Will and Testament as an obligation due the said Mina A. Carpenter from said decedent, and your petitioner believes that said indebtedness should be allowed as a claim and debt due the said Mina A. Carpenter from the estate of Fred F. Carpenter, deceased, and that said debt should be established and allowed as a claim against said estate as provided by law.''

There had been some controversy between the attorneys for the estate and the Slycords, the former insisting that charges in an earlier ledger of the doctor should be offset against the notes held by them. The estate finally yielded this point. The estate's attorneys, about this time, showed to the Slycords a statement of the claims and charges against the estate, including the claim of the widow in the sum of $5,580. An attempt to compromise the Slycord claims at 50 per cent failed. Mr. Bray was then employed by the objectors, and a little later Mr. de Reus was employed by the widow. Thereafter no quarter was asked or given. When Mr. de Reus arose to make a professional statement to the court, Mr. Bray asked that he be sworn, and upon the court's remarking that it was not necessary, Mr. Bray asked that he be given the right of cross-examination. Thereafter the Slycords filed objections to the report of the executrix. Respecting the claim of the widow, they said:

''That the indebtedness of $2,000 which said Executrix alleges is due her from said decedent should not and cannot be allowed as a claim against the estate * * * for the reason that no claim therefor was filed by said Executrix during the period of time allowed by law for so doing.''

On January 2, 1941, the widow filed an amendment to her claim for $2,000 and interest, as alleged to have been made by her in her application for widow's allowance of September 8, 1939, and found to be owing to her by the order of Judge Dingwell of the same date. She referred to the acknowledgment of the debt in the testator's will, the claim therefor in the application for widow's allowance, the order of the court thereon, the reassertion of the claim in her report of October 16, 1940, and stated that to avoid any ''technical objection'' which might be

raised because no temporary executor was appointed on September 8, 1939, to pass upon said claim, such an executor be then appointed to investigate said claim and report thereon to the court.

This amendment was prepared some time prior to December 30, 1940. On that day, Mr. de Reus told Clarence Kading, a lawyer of Knoxville, who had been county attorney for two or more terms, that he had prepared the amendment and was going to discuss the matter that day with Judge Dingwell and arrange for a hearing. He asked Kading if he would accept the appointment if made. Kading signified his willingness and at once began the investigation. He consulted with the attorneys for the estate, ascertained that prior to March 1, 1911, Mrs. Carpenter had in excess of $2,000 in her bank account. He examined the files and orders in the estate, and after his investigation of the facts and the law he recommended the allowance of the claim at a presentation of the matter on January 2, 1941, to Judge Dingwell, who had appointed him temporary executor. Mr. de Reus was present at the hearing. The Slycords were not represented and had not been notified. Upon trial of the matter, the court, in its order, stated:

"And the Court having further examined the record and said report of Clarence A. Kading, as temporary executor, having heard and seen the evidence and proofs offered, and being fully advised in the premises, finds that said report of Clarence A. Kading, as temporary executor, should be approved and the allowance of the claim of Mina A. Carpenter as a claim of the third class should be approved."

It was so ordered.

By agreement of the parties on February 21, 1941, Judge Cooper ordered that no hearing should be had on the interlocutory report of October 16, 1940, and objections thereto, and that the executrix should file a final report.

The objectors then filed an application for an order setting aside the order of Judge Dingwell of January 2, 1941, allowing the claim of the widow. At considerable length, they recounted all proceedings leading to the allowance of the claim. They alleged that there had been no compliance with Code section

11960 by the claimant, that no claim or amendment had been filed within the statutory limitation, that the alleged original claim was on a promissory note, and that the amended claim was based on a loan and was an entirely new claim. They further alleged that the allowance of said claim "was so entered by the court through mistake and inadvertence and without being informed of the facts * * * That the method adopted and pursued by said Executrix in obtaining said court order was a fraud upon the court." When the final report was filed, the objectors filed objections similar to those already filed, with amplifications.

A hearing with testimony was then had upon the claim as amended, the application to set aside Judge Dingwell's order, and the final report and objections thereto. The application to set aside the allowance of the claim was granted, and the final report was disapproved with respect to said claim. The court's decision was based upon its conclusion that no claim had ever been filed by the widow, and therefore there was no claim to amend. The court found that:

"* * * the evidence falls far short of showing any fraud. I don't think there was any fraud unless it be purely a legal fraud in the allowance of this claim at the time. I am inclined to think that the whole record shows no fraud, and I want that understood, that I am specially finding no fraud was actually perpetrated on anyone or on the Court. But I do believe that securing the allowance of this alleged claim—and the Court finds that no claim was filed, and the securing of the allowance by the Court then sitting, amounted to a legal fraud. For that reason it should be set aside."

Previously the court stated:

"I think there is such a mistake there that justifies the court in setting aside the entire proceeding of the allowance by the special administrator and the approval of it by the Court."

In the face of these statements of the court that the record fell far short of showing the perpetration of any fraud upon Judge Dingwell or upon anyone, and in the face of Judge Cooper's solicitude that there might be any implication from

his remarks of any fraud on the part of the executrix or her attorneys, or the temporary executor, we find the printed argument submitted to us bristling with insinuations, without basis in the record, such as the following:

"We now come to the 2nd day of January, 1941, which was quite a busy day for the attorneys representing Mina A. Carpenter. * * * There was no hearing before the court at the time the temporary executor and one of the attorneys for appellant presented the report of his allowance of the claim, except to lead the court to believe that a claim had been filed on September 8, 1939, and except to keep the court from discovering the true facts. * * * This is the record which impelled Judge Cooper to reluctantly find that a fraud had been committed upon the court. * * * On the same day [January 2, 1941] a court order was signed appointing Clarence A. Kading temporary executor in relation to the claim of Mina A. Carpenter. On the same day and almost instantly a report of the temporary executor was filed allowing the claim of Mina A. Carpenter in the amount of $5580.00 as a claim of the third class. Instantly this report of the temporary executor was presented to the court and an order was entered approving the report of the temporary executor allowing the claim. * * * Great care was taken to prevent the creditors of this insolvent estate from knowing about the movement to have a claim which was never filed established as a claim of the third class, * * * Speedily and on the same day of January 2, 1941, the temporary executor and the attorneys for the claimant rushed before the court with the report allowing the claim and the temporary executor stated to the presiding Judge that he had investigated the claim, but he did not state to the court that no claim had been filed by Mina A. Carpenter prior to the so-called amendment to claim."

Referring to the discovery of the executrix that her bequest was valueless, appellee's counsel said:

"Then it became necessary that some sort of an effective movement be speedily organized and more speedily consummated. The success of the movement required an accommodating temporary executor, the concealment of the facts from the pre-

siding judge, the keeping of the creditors out of the court house and the doing of the job quickly and quietly. One of counsel for the claimant made a special trip to Adel, Iowa, to find out for sure that the presiding judge would be back in Knoxville to hold a day of court on the day selected for the consummation of this movement. Apparently it was learned that the judge was coming back on that day. So on the morning of that day Mina A. Carpenter signed and verified and there was filed what was denominated an amendment to a claim of hers which she therein alleged she had filed on September 8, 1939, * * * Upon the filing of this document, Mina A. Carpenter was placed in seclusion and her attorneys asked Clarence A. Kading, also an attorney, to act as her temporary executor in allowing the claim. He immediately consented to so act and then an order was passed up to the court and signed appointing him temporary executor to investigate and report on the claim of Mina A. Carpenter. The temporary executor quickly and without hesitation and without evidence signed a report allowing a claim in favor of Mrs. Carpenter in the amount of $5580.00 * * * Then the temporary executor and two or three attorneys for the claimant, after ascertaining that the judge was alone in the court room, rushed in to the bench and Mr. Kading told the presiding judge that the amendment filed January 2, 1941, related to a claim which had been previously filed by Mina A. Carpenter, that she had a claim against the estate and that he had allowed the claim in the amount of $5580.00 as a claim of the third class. * * * So far as Judge Dingwell was concerned, his approval of the allowance of a claim was a mistake and nothing else. So far as the Executrix and her attorneys and her temporary executor were concerned, the act which they consummated was a fraud. * * * Judge Cooper was most sympathetic to the claimant and most charitable to her attorneys and to the temporary executor. * * * It was a secret affair and everything possible was done to keep creditors from knowing anything about what was taking place. Counsel for appellant contends that there was no fraud and he insists that the trial court found that there was no fraud. The trial court was reluctant to say anything which would reflect upon the integrity of the lawyers who were con-

nected with the movement which resulted in the allowance of a claim that was never filed. In the exercise of the greatest degree of charity, Judge Cooper said [what we have quoted above].''

We agree with the court's finding that there was no actual fraud. But we are seriously troubled by its conclusion that there was either ''legal fraud'' or mistake. The fact that the term ''legal fraud'' has no very definite connotation adds to the difficulty. It is nevertheless fraud, and though it may lack the opprobrium of fraud in fact, if it entails the same penalty or consequence of actual fraud, it should require the same definite proof as the latter. Fraud is not ordinarily presumed, either in law or equity. We do not mean by that it must be established by direct evidence, for it may be shown by circumstances and legitimate inferences reasonably drawn from surrounding conditions, or the relationship of those involved. Sioux City v. Western Asphalt Pav. Corp., 223 Iowa 279, 292, 271 N. W. 624, 109 A. L. R. 608, 609; Leach v. Central Trust Co., 203 Iowa 1060, 1063, 213 N. W. 777, 57 A. L. R. 1165. But presumptions of law are ordinarily in favor of the honesty and good faith of the participants in a transaction such as we have under consideration. Cole v. Brown-Hurley Hardware Co., 139 Iowa 487, 492, 117 N. W. 746, 18 L. R. A., N. S., 1161, 16 Ann. Cas. 846.

With respect to the contention that Judge Dingwell was mistaken or inadvertent, it must be borne in mind that to establish mistake the proof must ordinarily be clear and convincing. Especially is this true when it is sought to set aside the judgment of a court. The burden of proof, both upon the application to set aside the judgment and upon the objections to the final report, was upon the Slycords. It was their duty to present to the trial court the best evidence available to sustain that burden. The record gives no information or reason as to why Judge Dingwell, whose judgment is attacked and whose state of mind at the times in question was a vital element to a right determination of the issues, was not called as a witness. A court should not be left to the hazard of inference and insinuation when the one having the burden upon those issues

fails to offer available direct evidence and gives no reason for his failure. It is our conclusion that the judgment of the trial court that there was legal fraud or mistake in the allowance of the claim of Mrs. Carpenter is not supported by evidence of the quality and quantum required.

What reasonable basis is there for finding that Judge Dingwell was misled by legal fraud, mistake, or inadvertence? At least three hearings involving the estate matters were had before him—the application for the widow's allowance, the application to sell the exempt property, and the application to set off to her the proceeds of those sales. The Slycord claims were allowed by him, according to a statement in the argument. It is hardly credible that a judge of the ability, diligence, and long experience of Judge Dingwell would hear the various submissions and pass upon these matters and make the adjudications which he did without having definite knowledge of what he was doing. Neither are we persuaded that four lawyers and the elderly widow connived and collaborated to mislead the court. The Slycords insist that the statements in the application for the widow's allowance were not intended to assert a claim against the estate. Whether this is true or not, the application did definitely allege the indebtedness. There can be no reasonable doubt of its existence. The order on the allowance recites that, after hearing statements of counsel and being fully advised, the court found that the estate, not the decedent, was indebted to the widow in the amount claimed. This was an adjudication of that fact. The application was verified. Even the objectors did not question the justness of the debt. They urged no defense to it. They made no claim that it was barred by the general statute of limitations. They objected only that no claim was ever filed. The widow may have been in doubt when she asserted the claim, as to what was for her best interest. But she concluded later that her only chance of saving anything from the estate was to claim the exemptions and to rely upon her claim against the estate. In her report of October 16, 1940, she again asserted it, and the fact that she asked that it be established did not alter the fact that in granting the widow's allowance the court found that the estate was indebted

to her. The purpose of the amendment to the claim was to have a temporary executor to investigate and to pass upon the claim. There is no merit in the contention that the amendment stated a new and different claim. The claim, at all times, had been for money loaned to the doctor. In the widow's application, it was stated that the debt was evidenced by a promissory note. Whether this was an inadvertence, or the note had been lost, we do not know, but the debt was never paid, and the amendment was but a reassertion of this obligation. The amendment was germane to the indebtedness as found by Judge Dingwell, and its filing was timely, though after the statutory year for filing. The assertion of the claim and the adjudication thereof on September 8, 1939, were within the period provided by statute for filing claims of the third class. The fact that there was no prayer for the allowance of the claim in the widow's application, and that it was not expressly adjudged to be a claim of the third class, does not defeat the claim. In re Estate of Davie, 224 Iowa 1177, 1180, 278 N. W. 616.

It is a well-established rule that strict rules of pleading and strict conformity of proof to allegations are not required in probate proceedings. In re Estate of Davie, supra, and cases cited therein; Harrison v. Harrison, 124 Iowa 525, 528, 100 N. W. 344.

The trial court found that no claim had been filed by the widow. We think the court was in error in this. This case is not triable de novo, but the facts are not in dispute, and the issue is one of law. The fact that the judgment of Judge Dingwell may have been unwittingly rendered, which we do not concede, does not avail the objectors if it was a right judgment. We hold that it was a right and valid judgment upon the law and the record as made, and that the trial court erred in setting it aside, and in disapproving the final report with respect to the allowance of the widow's claim.

The order and judgment of the court are reversed and the case is remanded for further disposition not inconsistent herewith.—Reversed and remanded.

WENNERSTRUM, C. J., and MILLER, HALE, GARFIELD, STIGER, and SAGER, JJ., concur.