C. J. RICHMAN, Administrator, Appellant, v. EMMETT ADY et al., Appellees.

No. 40055.

NOVEMBER 11, 1930.

E. F. *Richman*, for appellant.

*Nichols, Tipton & Tipton*, for appellees.

DE GRAFF, J.—An understanding of the allegations of plain-

tiff's petition will afford an easy solution of the legal problems in this case. The petition was filed August 25, 1927, and alleges that plaintiff, C. J. Richman, administrator with will annexed of the estate of Adelaide Ady, deceased, by order of the district court of Iowa in and for Muscatine County, was duly authorized to file the petition. There is no such showing in the abstract of record.

It is next alleged that, prior to the making of the conveyance of real property recited in said petition, the said Adelaide Ady, of whose estate the plaintiff is administrator with will annexed, was possessed of a fee-simple title, unencumbered, of real estate, described, to wit: Lot 1 and the east 10 feet of Lot 2 in Block 8 in the city of West Liberty, county of Muscatine, state of Iowa.

By way of brief historical statement, it may be said that Albert Ady, husband of Adelaide Ady, occupied the premises in controversy as the home of himself and family for a period from sometime in the 1850's to 1883. Albert Ady died in 1913. The family prior to his death consisted of himself, his wife Adelaide, and son Emmett. It is also shown that an infant, known in this record as Jennie Ady (married name Rush), became a member of the family of Albert Ady from the time she was 2½ days old. Jennie was born April 30, 1874, and she continued to live with the family until the death of Adelaide Ady, on November 11, 1926. Jennie was adopted by Albert Ady by a duly recorded instrument dated May 4, 1874; but it nowhere appears that Jennie was ever adopted as a daughter by Adelaide Ady. Albert Ady, his wife Adelaide, and Jennie moved from West Liberty, Iowa, where the real estate in question is situated, to the city of Muscatine in 1883, but returned to West Liberty in August, 1892, and resumed their residence in the former home.

The petition of plaintiff further alleges that the defendants Janet B. (Ady) Malcomb and Albert E. Ady are the daughter and son, respectively, of the defendant Emmett Ady. This is admitted.

Paragraph 3 of plaintiff's petition alleges that Adelaide Ady made her last will and testament under date of March 17, 1913, wherein, subject to the payment of her debts and funeral expenses, she devised half of her estate to the said adopted daughter, Jennie Ady, one fourth to the defendant Janet Ady (now Malcomb), and one fourth to the defendant Albert E. Ady;

that said will is on file, but no effort was ever made to carry out its provisions by the defendant Emmett Ady, who was named executor in said will; that the said Emmett Ady and his deceased wife ''apparently rendered its provisions nugatory by procuring deeds to be made by the said Adelaide Ady subsequently to the date of said will, conveying all the real estate therein devised.''

Paragraph 4 of said petition alleges that, on or about July 20, 1920, Adelaide Ady made an additional will, ''in legal effect a codicil'' to the first mentioned will, bequeathing ''certain chattel property in the shape of household effects,'' which codicil was duly proved, and of which the petitioner is the administrator.

We now turn to the record with respect to the foregoing allegations and kindred matters. It may be recited that, after the Ady family moved to Muscatine, in 1883, the husband, Albert Ady, deeded the real estate in question to Adelaide, and on January 29, 1884, Adelaide Ady and husband Albert conveyed by warranty deed the home property to the son Emmett, subject to a $1,200 mortgage. This deed was duly recorded, February 2, 1884. On January 2, 1893, Emmett Ady and wife Martha conveyed by warranty deed to Adelaide the same premises. It further appears that, on August 15, 1922, Adelaide Ady, widow, conveyed by warranty deed, in consideration of $1.00 and other valuable consideration, to Martha Ady (wife of Emmett) the premises in question. It further appears. that, on October 16, 1919, Adelaide Ady, widow, certified, as shown by defendant's Exhibit No. 1, that she was the owner of the real estate in question, and that the same had been occupied by her as a home for many years past. She further certified that, during the 26 years last past, said premises had been subject to certain liens, expenses, and assessments, and that all of the same had been paid for her, at her request, by her son Emmett Ady; that said son paid all of the state and county taxes for the last 26 years, paid all the premiums for insurance on said premises during said time, paid for the cement sidewalks about said premises, paid the special assessments for sewers, and paid all the special assessments and interest for paving; that she acknowledged an indebtedness to said son Emmett for the moneys thus paid, and ''agrees and directs that he be repaid therefor out of the above-described real estate or the proceeds thereof.'' The record discloses that the various items paid by Emmett for his mother, as

shown by Exhibit 1, supra, amounted to $2,504.74. It is self-evident what the purpose of Adelaide was, in executing the document known as Exhibit 1. It may also be observed that the will of Adelaide made in 1913 was prior to the warranty deed of Adelaide to Martha, the wife of Emmett. Upon Martha's death, in December, 1926, Emmett, as surviving spouse, together with the two children Albert and Janet, took title to the lot by the law of descent. On December 21, 1926, Emmett Ady, widower, conveyed "his undivided one third of Lot 1, Block 8, in West Liberty, Iowa." It may be noted that this deed does not convey the east 10 feet of Lot 2 in said block.

When Adelaide Ady died (November 11, 1926), she was not the title holder of the real estate involved, and consequently her 1913 will as to this real property never become operative.

Plaintiff, in Paragraph 5 of the petition, alleges that there had been filed by Jennie Ady Rush, and allowed by the administrator plaintiff, a claim against the estate of Adelaide Ady, deceased, in the sum of $12,600, and that there were no other claims filed against said estate; that there are no assets in the hands of plaintiff with which to pay said claim, nor does he know of any assets of said estate out of which the said claim may be realized, except and unless the deeds (last two above mentioned) be set aside and the real estate subjected to the payment of such claim. There is no merit in this allegation. In the first place, under the statute of Iowa an administrator has no duty to perform or power to act with respect to real estate of the deceased unless and until he is authorized by a court of competent jurisdiction to sell the same to pay debts of the deceased. This involves an application for that purpose showing the distribution of the personal property and its inadequacy to pay the debts. Notice and hearing on said application are required, and a finding by the court that it is necessary to sell the real estate to pay debts, and the entry of an order by the court authorizing and empowering the administrator so to do. None of these things are either alleged in the petition or shown to have been done. In brief, there is nothing shown by the record which entitles the plaintiff administrator to any relief as to the defendants Janet B. Malcomb and Albert E. Ady.

Plaintiff's petition is in the nature of a creditor's bill. It involves an alleged fraudulent conveyance. Plaintiff, however,

has not only failed to jump the hurdle, but has not in fact approached it. The real estate here involved was a homestead in 1922, and exempt from judicial sale. Section 10150, Code, 1927. A widow or widower, even though without. children, is in law deemed a family while continuing to occupy the parcel of real estate used as a homestead at the death of the husband or wife, with certain exceptions not applicable here. Emmett Ady was a widower at the time he executed his warranty deed conveying his undivided one-third interest, on December 21, 1926, to his two children, the defendants Albert E. Ady and Janet B. Malcomb. It is said in *Wheeler v. Meyer*, 201 Iowa 59:

"It is well settled that the owner of a homestead may sell or convey it free from debts for which it is not pledged, and which were contracted after the homestead right attached, although the conveyance was made with the intent or belief that thereby creditors would be hindered or delayed in the collection of their claims."

It is also a well established principle that, unless the grantor is shown to have been insolvent at the time of the transfer, or at least indebted to others than the grantee, the conveyance is not in fraud of creditors. *Aldrich v. Van Hemert*, 205 Iowa 460. The real estate was the homestead of Adelaide Ady on August 15, 1922, which was the date of her warranty deed to Martha Ady; and, regardless of whether or not Jennie Ady Rush could properly be considered as a member of the family by adoption after the death of her father, the widow Adelaide by herself constituted a family, within the meaning and intent of the homestead statute. Section 2973, Code, 1897; Section 10151, Code, 1927.

It is rather an anomalous situation to contend that a conveyance of real estate is in fraud of creditors when, at the time of the conveyance, the grantor was not in debt; and the record fails to disclose a debt owed by the grantor Adelaide at the time her deed was executed to Martha, unless we except what she owed her son Emmett, as shown by her written acknowledgment of that fact in Exhibit 1, to which reference has heretofore been made. It was stipulated that a claim by Jennie Ady Rush had been allowed by the administrator against the estate of Adelaide Ady in the sum of $12,600; but the record fails to disclose the said claim, when the claim or any part of it arose, or the nature

of said claim. The record fails to disclose that Adelaide or any of the defendants in this case ever had any knowledge of the claim. Under the circumstances of the case at bar, a fraudulent intent cannot and will not be imputed to the grantor. See *Day v. Lown*, 51 Iowa 364; *Kervick v. Mitchell*, 68 Iowa 273.

A reading of the instant record shows clearly that the plaintiff administrator, even if it be conceded, *arguendo*, that he is a proper plaintiff, has failed to prove the allegations of his petition.

The decree entered by the trial court is affirmed.—*Affirmed.*

MORLING, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.