IN RE ESTATE OF BENJAMIN F. JACKSON.

W. H. FRAZIER, Administrator, Appellee, v. INA E. JACKSON et al., Appellants, C. L. ROE, Intervener, Appellee.

No. 44344.

June 21, 1938.

C. W. Kellogg, for administrator de bonis non, appellee.

Fred E. Egan, for appellants.

Baron & Bolton, ffor intervener, appellee.

STIGER, C. J.—Benjamin F. Jackson died intestate seized of real estate in Monona and Harrison counties. Fred Jackson

was appointed administrator of the estate of decedent on February 27, 1925. The first publication of the notice of the appointment of the administrator was on March 5, 1925. On October 24, 1925, the Turin Savings Bank filed a claim against the estate for $3,400 which claim was of the 4th class. No notice of hearing on the claim was served on the administrator within twelve months from the date of the first publication of the notice of the appointment of the administrator under the provisions of Code section 11972, nor was the claim allowed by the administrator within the twelve months period.

Subsequent to the first year of administration, payments were made on the claim by the administrator and on March 17, 1930, the date of the closing of the bank, the balance due on the claim was the sum of $1,150. The Harrison County land, consisting of 170 acres, was at the time of the death of decedent, encumbered by a mortgage in the sum of $2,000 in favor of Arley Wright. In January 1933, Wright commenced a foreclosure suit against the administrator and the heirs of Benjamin F. Jackson who were the owners of the real estate.

Prior to decree, a stipulation was entered into on March 1, 1933, permitting plaintiff to immediately take judgment against defendants, providing that a special execution should issue, and extending the time for redemption by defendants to March 1, 1936. The stipulation, entered into because the defendants were unable to pay the indebtedness and taxes in full because of economic conditions, provided that the defendants would sell the corn on the premises and pay the plaintiffs the proceeds derived therefrom and that defendants would pay the plaintiff one-half of all crops and rents received from the premises for the years 1933, 1934, and 1935 and would pay the balance of the judgment and all costs and taxes and make full redemption on or before March 1, 1936. The land was bid in by Wright for the full amount due in the sum of $2,426.21. During the two and one-half years from the date of the stipulation to September 25, 1935, defendants paid to Wright all but $552.05 of the amount due. After the certificate of sale was issued to Wright on May 29, 1933, C. L. Roe, intervener herein, in October 1933 purchased the remaining assets of the Turin Savings Bank, which closed in 1930, which assets included the claim of the bank filed against the estate in October 1925. Roe then entered into an agreement with Wright under which he purchased the

sheriff's certificate of sale for $552.05, the balance due under the stipulation for an extension of the period of redemption, subject to the terms of the stipulation, Roe agreeing that redemption could be made by defendants upon the payment of said sum of $552.05.

On February 21, 1936, the defendants paid into the office of the clerk of Harrison County the balance due under the stipulation and thereby made full redemption.

During the eleven years intervening between the appointment of the administrator in 1925 and the commencement of this proceeding to sell the Harrison County real estate to pay the claim of the Turin Savings Bank purchased by intervener, the defendants made valuable improvements on the estate, paid the taxes and redeemed from the sale on special execution in the foreclosure proceedings.

In October 1935, Roe, intervener, applied for a citation to the administrator, requiring him to show cause why he should not proceed to sell real estate to pay the claim of the bank which had been assigned to him. Jackson then resigned as administrator and plaintiff W. H. Frazier was appointed administrator de bonis non. Frazier was notified of the citation and filed a resistance which contained substantially the same defenses as those set forth in the answer of defendants to the administrator's petition to sell real estate. A hearing was had in the citation proceeding and on June 16, 1936, Judge Newby ordered the administrator to proceed with the sale of the real estate as provided by law for the purpose of paying the claim of C. L. Roe. In November 1936, Frazier, administrator, filed his petition for the sale of the real estate for the purpose of paying the claim of C. L. Roe which was in the amount of approximately $1,200.

The defendants, heirs of decedent, filed a resistance to the application in which they stated that the claim of the Turin Savings Bank was barred by Code section 11972, because of the failure of claimants to serve notice of hearing on said claim on the administrator as provided by said section; that the administrator, Jackson, did not approve the claim herein during the first year of administration; that 10 years elapsed since the death of Benjamin Jackson and the filing of the application to sell real estate; that the defendants erected buildings on the estate, made extensive repairs, paid the taxes and the mortgage on the real estate and that several heirs had sold their interest

in said real estate to other heirs; that during said period they had no knowledge that the bank or the receiver of the bank or C. L. Roe ever claimed any right or interest in the premises; that neither the bank nor Roe redeemed as probate creditors under the provision of Code section 11778; that they had made full redemption from the sale on special execution under the contract with Wright for an extension of the redemption period; that the only right of the intervener under the certificate of sale purchased from Wright was to the $552.05, the balance necessary to redeem which had been paid to the clerk of the court by the defendants.

Roe, who intervened in the proceeding to sell real estate, alleged that the order of the court made in the citation proceeding on June 16, 1936, directing the administrator to proceed to sell the real estate to pay the balance owing intervener on his claim adjudicated against the heirs that the real estate was subject to sale for the payment of said claim; that the delay in the sale of real estate was occasioned by the interference of the heirs with the administrator; that the bank, assignor of the claimant, was induced not to proceed with a forced sale of the real estate by a promise by the administrator and heirs that the claim would be paid without the necessity of the sale of real estate; that there was collusion between the heirs and administrator in deferring the sale of the real estate; that the administrator in the citation proceedings filed a resistance identical with the resistance filed by the heirs and that the ruling of the court ordering the sale was made after a full and complete hearing which determined in advance the issue presented in this proceeding; that the heirs and administrator induced intervener's assignor of the claim to delay action by false promises that the claim would be paid from sources other than the sale of real estate, and asked the court to order the real estate sold.

The trial court found for the intervener and ordered the land sold for the purpose of paying his claim.

Appellants' first proposition is that the court erred in ordering a sale of the real estate because the claim of the Turin Savings Bank against the estate was barred by Code section 11972 which reads:

"11972. When claims of fourth class barred. All claims of the fourth of the above classes, not filed and allowed, or

if filed and notice thereof, as hereinbefore provided, is not served within twelve months from the giving of the notice aforesaid, will be barred, * * * unless peculiar circumstances entitle the claimant to equitable relief.''

■ The first publication of notice of the appointment of the administrator was on March 5, 1925. The claim was filed on October 24, 1925, and thus became a claim of the 4th class. No notice was served on the administrator within the twelve months period. The claim was not allowed by the administrator during this period and the claim was barred unless peculiar circumstances entitled intervener to equitable relief. We find no evidence of any peculiar circumstances that excuse the failure to serve timely notice of hearing on the claim.

Neither the administrator nor the heirs said or did anything that induced the representatives of the bank not to serve the required statutory notice. There is no evidence to sustain the allegation of the intervener that the heirs promised to pay the claim. No conversations or transactions were had by the representatives of the bank or the intervener with the heirs at any time in regard to this claim. There is no foundation for the imputation that the heirs were guilty of fraud, collusion with the administrator, or other misconduct. The record does not disclose that the administrator promised during the twelve months period to pay the claim or requested the bank not to serve the required notice.

Mr. Durwood, president of the bank from 1925 until it closed in 1930, testified for the intervener. His testimony is, in part, as follows:

''I talked to Fred Jackson after the sale of real estate in Monona County (which sale was had in 1928) but there was nothing very definite. We weren't pressing him because we believed he could close the estate. I thought the claim was a good claim against the estate and didn't do anything about it. From November 1st, 1925 to March, 1928 the only conversation I had with the Administrator was I remember telling him that the' banking examiner was riding us and he really had to do something about it; they were pressing us. From 1928 until the time the bank closed we had plenty of conversations with the administrator about it, but didn't press him, because we figured he was going to close the thing up. I considered the claim a good

claim against the estate. It was drawing 8 per cent interest and I considered it a good loan. I did not press him hard at all from 1928 to 1930. I did not have anything to do with the liquidation of the bank after it went into receivership and I never had any conversation with Fred Jackson after the bank failed. The reason I did not go to my lawyer or do anything else was because this man said as quick as they closed the estate he would pay. I was in active charge of the bank from November 1925 to December 1930 as president, and I was in charge of all the collections and the note case, and was in fact the officer in charge of running the bank and the active head of the institution. All payments made on the claim were paid to me. I never had any conversation with the other heirs.''

No reason or excuse was given by Mr. Durwood for the failure of the bank to give the statutory notice that would excuse the default.

Claimant, intervener, who purchased the claim from the receiver of the bank in 1933, testified that he did not meet Jackson, the administrator, until 1935 and that he did not talk with any of the heirs at any time. He did not testify to any facts that would tend to excuse the failure to comply with the statute of limitations.

Assuming, as contended by intervener, that the administrator promised to pay the claim, a mere promise to pay a claim against an estate is not a sufficient excuse for failure to serve the required notice thereof and a claimant can not rely thereon to excuse his negligence and lack of diligence. It is not claimed that any inducement was held out not to file the claim.

The fact that an estate is closed and solvent, while entitled to consideration, is of itself not sufficient to warrant the granting of relief. In addition, there must be a showing of diligence or excuse for want of diligence. Colby v. King, 67 Iowa 458, 25 N. W. 704; Mosher v. Goodale, 129 Iowa 719, 106 N. W. 195; Chicago & N. W. R. R. Co. v. Moss, 210 Iowa 491, 231 N. W. 344, 71 A. L. R. 936; Lucas v. Ruden, 220 Iowa 494, 260 N. W. 60; Anderson v. Storie, 208 Iowa 1172, 227 N. W. 93, 66 A. L. R. 1410; In re Jacob's Estate, 119 Iowa 176, 93 N. W. 94.

In the case of Lucas v. Ruden, 220 Iowa 494, we stated on page 500, 260 N. W. 60, on page 63:

''The decisions of this court have been uniformly consistent

in holding that negligence on the part of a claimant will defeat his right to equitable relief regardless of any element of estoppel.''

After filing the claim in 1925, nothing was done by the bank in regard thereto until 1928 when Mr. Durwood told the administrator that he would have to do something about it. There was manifest neglect of the claim and lack of diligence on the part of the bank. No peculiar circumstances having been shown that warrant relief in equity, the claim was barred by the statute of limitations.

In 1928, long after the expiration of the limitation period, the administrator made partial payments to the bank on the claim. The source of the money paid on the claim is not revealed. The record does show, however, that the administrator did not take possession of or receive any income from the real estate. While in this state we have held that an administrator is not necessarily bound to interpose a plea of the statute of limitations against a claim which he believes justly due from the estate, and may, in good faith, pay such claim from personal property in his hands as administrator (see In re Estate of Baumhover, 151 Iowa 146, 130 N. W. 817), such waiver of the statute will not affect the right of the heirs to invoke the statute when the administrator brings an adverse proceeding against them to sell their real estate for the benefit of creditors. Authority of the administrator over real estate must be derived through compliance with Code sections 11933, 11935, and 11937, hereinafter referred to, and he is without power to bind the heirs by his payments or to impair the defenses of the heirs in the action to divest them of their title by the proceeding to sell real estate. 24 C. J. 303, sec. 919; Herrick and Doxsee (3d Ed.), vol. 1, page 444.

The intervener filed an application for a citation to the administrator requiring him to show cause why he should not proceed to sell real estate to pay his claim. The administrator offered substantially the same defenses in the citation proceeding why he should not sell the real estate that was offered by defendants in the subsequent proceeding against the heirs to sell the real estate. One of the defenses offered by the administrator was that the claim was barred by the statute of limitations. On June 26, 1936, the trial court found for the intervener and

entered an order finding that the real estate of the defendants. was subject to sale for the payment of intervener's claim and ordered the land sold. Claimant urges that there was no appeal from said order for sale and that a full and complete hearing was had on the issues raised by defendants in the petition to sell real estate, which issues were presented by the administrator in the citation proceeding, and. that the order for sale adjudicated that said claim was not barred by the statute of limitations and was subject to sale to pay the claim and that such adjudication was binding on the heirs in the subsequent proceeding for authority to sell the real estate.

We do not agree with this contention. The real estate vested in the heirs subject to the right of the administrator to subject the real estate to the payment of debts under the provision of Code sections 11933, 11935, and 11937, which provide an exclusive procedure and method for divesting the heirs of their title. Flora v. Brown, 159 Iowa 253, 140 N. W. 364; In re Estate of Pitt, 153 Iowa 269, 133 N. W. 660; Good v. Norley, 28 Iowa 188.

The order in the citation proceeding directed the administrator to proceed forthwith to a sale of the real estate *in the manner prescribed by law.* The only authority the administrator had under the order made in the citation proceeding was to commence an action to sell real estate under the above statutory provisions. If the order made in the citation proceeding could be construed, as contended by intervener, to authorize a sale of the real estate without a compliance with the special procedure provided by the above statutes, such order would not be binding on the heirs, who were not made parties to the application for citation, nor res adjudicata of the instant proceeding.

The real estate of the defendants is not subject to sale for the purpose of paying the claim of the intervener and the case is reversed.—Reversed.

SAGER, DONEGAN, RICHARDS, KINTZINGER, and MILLER, JJ., concur.

HAMILTON, J., concurs in result.

MITCHELL, J., dissents.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority and therefore respectfully dissent.

The claim was on a promissory note. It was duly filed. The administrator recognized it and made many payments, reducing it from approximately $3,000, to somewhere around $1,100. In addition to this, the administrator applied for authority to sell Monona County real estate, and set up this claim as a valid existing claim and as reason for making application for the sale of the real estate. The court, relying upon the application of the administrator, did order the real estate to be sold.

In the case of Wilson v. McElroy, 83 Iowa 593, this court, at page 594, 50 N. W. 55, at page 56, said:

"The evidence, beyond controversy, establishes that the promissory notes constituted a just and lawful claim against the estate, which ought to be allowed, unless the proceeding is barred by the statute of limitations.

"In our opinion defendant cannot, in view of the facts of the case, invoke the statute to defeat the action. The evidence shows that after the claim was filed for allowance by the court the defendant paid the plaintiff five hundred dollars thereon, and took a receipt showing such payment. He offered to satisfy the whole claim if the plaintiff would accept real estate in payment thereof. He reported to the court the notes as being a valid claim against the estate, and in a petition for the sale of real estate to pay debts the plaintiff's claim is mentioned and referred to as valid and subsisting. We think, in consideration of these facts, the plaintiff's claim is not barred by the statute for these reasons. * * * Surely, the defendant would not be permitted to withdraw his answer, admitting the allegations of the petition, and file an answer setting up the statute of limitations, on the ground that, as there was no original notice put in the hands of the sheriff, the statute continued to run. In the case before us the defendant in effect approved the plaintiff's claim in his report to the court, in his petition to sell lands, and in his written indorsement of payment made upon the notes. These acts, in our opinion, are express approvals of the claim, and comply with the requirements of Code, section 2408. * * * Surely, after having made payment upon the plaintiff's claim, and recognized it in his report and petition as subsisting and valid, and after offering to pay in real estate, thus leading the plaintiff to believe it was approved and ad-

mitted, and inducing him to act accordingly, the defendant is estopped now to set up the statute of limitations to defeat the action.''

The majority rely to a great extent upon the case of Lucas v. Ruden, 220 Iowa 494, 260 N. W. 60. In that case I dissented, but in my humble judgment the case at bar goes even further than the case of Lucas v. Ruden, supra. Here we find an administrator making several payments upon the claim, a recognition and approval of the claim by filing an application with the court to sell real estate in order to pay the claim.

I would affirm the lower court.