IN RE ESTATE OF BENJAMIN F. MYERS.

No. 46285.

DECEMBER 14, 1943.

REHEARING DENIED FEBRUARY 11, 1944.

H. E. Newton, of Stuart, Allen T. Percy, of Dexter, and Stipp, Perry, Bannister & Starzinger, of Des Moines, for William M. Myers, Paul M. Wolf, and Lewis Jolley, Executors, William M. Myers, Paul M. Wolf, and Lewis Jolley, Florence M. Wolf, Ada M. Jolley, and Helen E. Heimberger, appellants.

H. E. Newton, of Stuart, for Allen T. Percy, appellant.

R. K. Craft, of Adel, for W. C. Southwick, administrator with will annexed, appellee.

Charles I. Joy, of Perry, for Mary A. Myers, appellee.

HALE, J.—Objections to final report of the executors were filed by W. C. Southwick, administrator with will annexed of the estate of Benjamin F. Myers, deceased, and Mary A. Myers, widow and devisee of said Benjamin F. Myers, and Lenore I. Sulgrove, daughter and legatee and devisee of said Benjamin F. Myers, against William M. Myers, Paul M. Wolf, and Lewis Jolley, personally and as former executors of the estate of Benjamin F. Myers. The objections will be taken up separately. The court ruled that the executors were indebted in the amounts hereinafter set out. There was no allowance to the executors for services and their attorney, Allen T. Percy, was allowed the sum of $300. From this ruling of the court the executors appeal, and Allen T. Percy, attorney, appeals from the amount of the allowance to him.

Benjamin F. Myers died August 8, 1931, possessed of a considerable estate, including two farms, one in Dallas county, of 240 acres, and the other of 320 acres in Madison county. There was a mortgage of $10,000 on the west half of the Madison county farm to Bankers Life Company. Decedent also owed $5,121.99 to Valley National Bank on a note for money he had borrowed to carry on farming operations. There were other notes and obligations amounting to more than $4,000. During his lifetime Mr. Myers had operated the two farms under a partnership arrangement with his son, William M. Myers, who

occupied the Dallas county farm, and his son-in-law, Paul M. Wolf, who occupied the Madison county farm. Decedent furnished and owned half of the livestock, grain, and feed on the farms and the tenants provided and furnished their own farming equipment and labor. The income therefrom was divided equally between the owner and the tenants.

For a better understanding of some of the objections to the final report it is necessary to note some provisions of the will, which was admitted to probate on August 19, 1931. After directing payment of debts, the personal property of decedent was bequeathed to his five children, Florence M. Wolf, Ada M. Jolley, Helen E. Heimberger, William M. Myers, and Lenore I. Shoff. Apparently, Lenore I. Shoff, described as a daughter in the will, Lenore I. Myers, so described in the inventory, and Lenore I. Sulgrove, appellee and objector to the report of the executors, is one and the same person. A property in Dexter was devised to Mary A. Myers, the wife. The fourth clause of the will devises a life estate in the two farms to Mary A. Myers, and continues as follows:

"* * * she to have the right to the use, occupancy and enjoyment of all of said real estate as well as the rents and profits arising therefrom, for and during the term of her natural life only; she to pay all taxes assessed against said real estate, keep the improvements thereon in reasonable repair, and insured for the benefit of my said estate in some reliable insurance company. The provisions made herein for my said wife to be in lieu of her dower and distributive share in and to my said estate, as surviving widow."

The fifth clause of the will directs that the real estate shall not be mortgaged; and the sixth clause directs that after the death of testator and his wife his executors shall, as soon as practicable and consistent with the best interests of the estate, proceed to sell and convert into cash all of the real estate in which his wife was devised a life interest.

Seventh, the will directs a division of the net proceeds of the sale among the children named above. The eighth clause of the will is important to the controversy before us. It provides as follows:

"It is my wish and I hereby request that my beloved wife, Mary A. Myers, appoint the executors hereinafter named, as her agents, to lease for her benefit, the real estate described in Item Fourth hereof, collect the rents, attend to paying of taxes and making of necessary repairs to improvements thereon; thereby relieving my said wife of the work and worry connected therewith; and I further request that said real estate shall be rented for not less than Eight ($8.00) Dollars per acre nor more than Twelve ($12.00) Dollars per acre, using their best judgment as to the amount of rental for any year in accordance with the conditions prevailing at that time * * *."

The will further provides for determination of the proper amount of rental by arbitration in case the executors could not agree as to the amount thereof. The eighth clause continues:

"* * * and provided further that my son, William M. Myers, and son-in-law, Paul M. Wolf, shall be given the refusal of the farms which are now occupied by them as tenants, at the rental agreed upon by said executors or said committee selected by them, as the case may be."

The ninth clause provides:

"It is my wish and I hereby request that if the fund realized from the rents and profits of the real estate described in Item Fourth hereof shall, on the first day of January in any year exceed the sum of Two Thousand ($2,000.00) Dollars and all taxes, repairs, insurance and living expenses of my said wife have been fully paid for the preceding year, that all surplus above said sum of Two Thousand ($2,000.00) Dollars be divided by my said wife, Mary A. Myers, among our children then living and the issue of any child who may have deceased, such issue taking the share to which such deceased child would have been entitled if living."

William M. Myers, Paul M. Wolf, and Lewis Jolley were appointed executors and qualified as such August 20, 1931.

Orders were made by the court allowing $2,500 for support of the widow and authorizing the executors to continue the testator's business of feeding livestock. The inventory and pre-

liminary inheritance-tax report showed the widow and the heirs named above; fixed the value of the Dexter property at $3,500, the Dallas county farm at $42,000, and the Madison county farm at $52,000; accounts receivable at $10,831.52; cash, $822.50; note and mortgage on Minnesota land of W. J. Marsh for $5,450, which was later compromised for $1,000; household goods, $570; and general assets, including decedent's interest in the stock and property on the rented farms, $12,428.17. The Madison and Dallas county farms continued to be rented by Paul M. Wolf and William M. Myers, respectively.

Included in the inventory was certain indebtedness of the three executors: William M. Myers, $5,349.43; Paul M. Wolf, $4,379.55; and Lewis Jolley, $287.25; together with a note for $750, with interest amounting to $822.50. Payments were made on some of this indebtedness and the amounts due were evidenced by notes given by the various parties to the executors as follows: Paul M. Wolf, on his note of April 25, 1932, computed with interest to the time of trial, $2,548.30; William M. Myers, balance found due at trial with interest on note executed April 25, 1932, $1,936.91; and Lewis Jolley, on his note of June 1, 1930, with interest, $1,491.31, and on his note and account of $287.25, with interest, $529.15; all as found by the court to be due. Other matters in relation to the conduct of the estate will be referred to under the different objections as they are considered.

Dissatisfaction on the part of the widow, Mary A. Myers, and others finally resulted in an application for the removal of the executors, and upon hearing the district court ordered their removal, which order was later affirmed by this court on October 15, 1940. See In re Estate of Myers, 229 Iowa 170, 294 N. W. 235.

Four intermediate reports were filed by the executors. The first report covered the period from August 20, 1931, to the date of such report, April 9, 1932, and showed a balance of cash on hand of $1,390.34. The second report, filed February 15, 1934, was in two parts, one entitled "estate account," in which there was a balance of $95.43 belonging to the estate, and one entitled "rent account," in which there was shown a balance of $14.26. This report also showed the amounts due from the executors as

heretofore stated, and included also $360 owing by William M. Myers for 1,448 bushels of corn, $185 owing by Paul M. Wolf for 740 bushels of corn and $60 owing by Paul M. Wolf for 176½ bushels of wheat. Later there were filed a third and fourth report of executors on November 19, 1934, and April 25, 1939, respectively.

On January 11, 1940, in accordance with an order of court, the executors filed their final report, to which objections were taken by the appellees herein. These objections were heard and on the 4th day of May 1942, the court rendered judgment thereon. The appellants herein take exception to six of the findings and rulings of the court and these will be taken up in their order.

I.   The court found the executors liable officially for the failure to collect from themselves personally the amounts they owed at the time of decedent's death, and to this ruling and order appellants take exception. Except as to one credit alleged to be due Paul M. Wolf of $1,065.61, which will be discussed later, the amounts found by the court as due the estate are not seriously in dispute, and were the amounts reported by the executors in their reports. The court further found that the executors were liable for the difference in value between certain personal property consisting of feed bunks, hog troughs, etc. inventoried at $168 and finally sold in February 1938 for $83.88, amounting, with interest, to a difference of $111.80. No contention is made in the appeal by the former executors in regard to this latter charge nor the charge for corn and grain purchased from the estate by the executors, amounting, in the case of William M. Myers, to $510.24, including interest, and, in the case of Paul M. Wolf, to $346.79, including interest, so that we may consider these two charges as admitted.

Appellants do not dispute the general rule as laid down in McEwen v. Fletcher, 164 Iowa 517, 146 N. W. 1, Ann. Cas. 1916D, 631; In re Estate of Parker, 189 Iowa 1131, 179 N. W. 525; In re Estate of Windhorst, 227 Iowa 808, 288 N. W. 892; and In re Estate of Christensen, 229 Iowa 1162, 296 N. W. 198; and cases cited therein. Executors are liable for debts which they personally owe the deceased in the absence of any showing of insolvency throughout the period of indebtedness. The rule

is that insofar as an executor or administrator may be indebted to the estate at the time of his qualification, it is his duty to account for such indebtedness, and he will be presumed to have set aside funds for the payment thereof unless it be shown that he was insolvent and did not have and could not procure the money. In re Estate of Christensen, supra. The principal argument of appellants here is to the effect that at the hearing in the district court they did so show their insolvency. We have examined the testimony in relation thereto and are satisfied with the holding of the district court that it fails to sustain the burden imposed upon the executors of showing insolvency. This was a question of fact, and under the general rule that the finding of a court under competent evidence on a disputed question of fact shall have the force and effect of the verdict of a jury we hold that so far as these items of indebtedness to the estate are concerned the holding of the district court was correct and should be affirmed. This is with the exception of the credit to Paul M. Wolf hereinafter referred to. The burden to show insolvency is upon the debtor executors and such insolvency must be shown throughout the whole period of indebtedness to avoid liability. A mere showing that at some time during the period the debtor was insolvent is not sufficient. Subject to remand and further order on the question of credit on the Paul M. Wolf indebtedness, the order of the court as to the indebtedness of the executors is affirmed.

II. The second assignment of error is that the court erred in charging the executors with $670 plus interest on account of disbursement of said sum from the funds of the estate and paid to Ada Jolley, who is the wife of one of the executors. This disbursement is referred to as payment on a note in Exhibit D-45, which is an estate record which was kept under the direction of the attorney, Mr. Percy, in his office and is the estate account from which the executors' reports were prepared. The court refused to allow this amount as a credit to the executors. The evidence in relation to this disbursement was meager, and, although it seems to have been on a note, none of the executors could testify from recollection what the payment was for. It is assumed in the argument of appellants that this amount was probably paid to Ada Jolley because she had stayed at home and

earned it by taking care of her father and mother. This coincides with the statement of Mrs. Myers herself, as follows:

"I am the widow of Benjamin F. Myers, deceased. We were maintaining a home here in Dexter at the time of his death. Ada Jolley lived here with us and was paid so much a year for staying here. He paid Ada for what she put in here. That is where the $600.00 comes on."

This testimony indicates that Ada was paid in some amount for services. Exhibit D-45 indicates that the note was given August 1, 1931, in payment of a debt prior to Mr. Myers' death, and it would be a fair conclusion that this was the note afterward paid by the executors.

Objection is made by appellees that there was no claim filed in the estate for this amount. But the charge consisting, as we believe it did, of a note, it could be paid by the executors without the actual filing of a claim. See In re Estate of Plendl, 218 Iowa 103, 253 N. W. 819, citing In re Report of Atkinson, 210 Iowa 1245, 232 N. W. 640, and quoting from In re Estate of Harsh, 207 Iowa 84, 218 N. W. 537.

Under the testimony produced, and no evidence to the contrary, there is no such dispute in the facts as would render necessary the application of the rule heretofore referred to—that the holding of the court has the effect of a jury verdict—since the court's holding seems to be unsupported by the evidence. We hold that such payment should be allowed as reported. The ruling of the court as to this charge against the executors should, therefore, be reversed.

III–IV. Appellants assert that the court erred in charging to the executors $249.71 on account of penalties collected by the county treasurers of Dallas and Madison counties on the taxes on the farms in several different years, since it was the duty of the life tenant to pay the taxes. We will consider this assignment of error in connection with the argument of appellants that the court erred in charging rents on the farms to the executors. They argue that because the life tenant was in possession of the farm and entitled to the rent therefrom the executors are merely her agents, and, if liable for any rent, are liable to her as agents of the life tenant and not to decedent's estate.

Item Eight of the will states that it is the testator's wish that his wife appoint the executors named in the will as her agents to lease the properties, collect the rents, attend to payment of taxes, and the making of necessary repairs, etc. This was not a direct appointment of the executors as agents but merely a request—a precatory request. The widow was not obligated to appoint the executors named as her agents, and, as a matter of fact, a large part of her business was transacted for her by Mr. Percy, the attorney. Under the will there was no authority conferred upon the executors, as such, to rent the land, pay the taxes, or do any of the other things enumerated in Item Eight of the will. Such authority could come only from the will or from the person entitled to such rents or required to pay the taxes, namely, the widow and life tenant, Mary A. Myers. It would appear, therefore, that for their actions in regard to the land they are responsible not to the estate of deceased but to the owner of the life interest in the real estate, Mrs. Myers. As agents of this devisee they were responsible to her. Richman v. Ady, 211 Iowa 101, 232 N. W. 813; In re Estate of Jackson, 225 Iowa 359, 280 N. W: 563; In re Estate of Pitt, 153 Iowa 269, 133 N. W. 660.

But assuming that appellants did enter into a lease without authority from Mrs. Myers, and with no authority under the will, and without authority under the statute since there were other heirs present and competent to act and take charge of the real estate, they would still not be liable to decedent's estate but only liable to the person having the life ownership of such land. Cohen v. Hayden, 180 Iowa 232, 157 N. W. 217. In the Cohen case the defendant, as executor, had leased a business property without authority, and, as the evidence showed, with the knowledge on the part of the lessee that she had no such authority, and the court held that she was personally liable thereon. Such is also the holding in Cheyne v. Quackenbush, 198 Iowa 420, 199 N. W. 367. So that in any event, whether authorized by the widow, or without authority from anyone, the liability of such executors would not be to decedent's estate but to the person to whom such rents were payable. See, also, Laverty v. Woodward, 16 Iowa 1; and In re Estate of Bourne, 210 Iowa 883, 232 N. W. 169. If the executors did, in fact,

assume possession and control of the real estate, they might become chargeable as trustees for the owner, but not as such executors. That they are merely agents is expressly stated in the will. Appellees urge that the executors did take charge of said real estate and they cannot escape liability for the penalties created because they failed to perform their duty to said estate. This is true; but the duty was not to the estate, but to the life holder of the real estate.

Appellees argue that the will created an equitable conversion and we may assume that it so did. They argue further that such real estate became personal property at the instant of Mr. Myers' death and that it was the duty of the executors to take charge of all personal property. In support of this proposition appellees cite Ihle v. Ihle, 222 Iowa 1086, 270 N. W. 452; and In re Estate of Holderbaum, 82 Iowa 69, 47 N. W. 898. The Ihle case does not apply. In that case there was no intervening life estate and the rents accrued between the equitable conversion and the actual sale of the land were collected by the administrator. In the Holderbaum case, as shown by the record on file in this court, the executor was directed by the will to manage and control the real estate. The decision in that case charged the executor for the use of the land. In the instant case, the widow is in fact the landlord. Beaver v. Ross, 140 Iowa 154, 160, 118 N. W. 287, 289, 20 L. R. A., N. S., 65, 17 Ann. Cas. 640, holds that by the terms of the will there is immediate equitable conversion, but states: "Of course, this doctrine can not be extended so far as to defeat the widow of her rights." The Beaver case is cited in Peters v. Thoning, 231 Iowa 755, 2 N. W. 2d 76, where the court holds that the will accomplished an equitable conversion at the time of the testator's death but enjoyment was postponed until the death of the life tenant. Whenever the equitable conversion takes place, it can in no way affect the use and enjoyment by the widow of her life estate.

The theory, and, we think, the true rule is that in a case where there is a life estate, after which the property is to be sold, the interest of the life tenant is realty but the interest of the remainderman would be treated as personal property from the time of the testator's death.

In the instant case the will passed to the remaindermen no right to the possession of the real estate but only a right to the proceeds at the expiration of the life estate, as is stated in Shillinglaw v. Peterson, 184 Iowa 276, 288, 167 N. W. 709, 713, in which case the testator created a trust for the life of certain devisees. The court there says:

"While the cestui que trusts are alive, and the trustee in full and active possession of the trust property, no right to the possession or enjoyment of even the proceeds of the estate came to these plaintiffs under this will."

Since we are convinced that the rent from the land was not an asset of the estate, the question raised as to the amount of rents due or unpaid is not material to this case. Whether or not appellants are responsible to Mary A. Myers is not a question which can be determined in this proceeding and we do not consider or decide it.

The court determined that appellants were acting as executors and not as agents, but we find no warrant for such a holding. Therefore, there can be no liability in this proceeding against appellants and our holding must be that the court was not warranted in sustaining this objection to the final report.

█ This holding as to rents necessarily carries with it the ruling that as to penalties accrued by reason of nonpayment of taxes the executors are likewise not liable to the estate, but, if any liability exists, it would be to Mary A. Myers, the widow and life tenant of the property. This objection to the report should have been overruled.

█ We do not find that under the terms of the will any part of the rents is shown to belong to the remaindermen. Under Item Nine of the will it is provided:

"* * * that if the fund realized from the rents and profits of the real estate described in Item Fourth hereof shall, on the first day of January in any year exceed the sum of Two Thousand ($2,000.00) Dollars and all taxes, repairs, insurance and living expenses of my said wife have been fully paid for the preceding year, that all surplus above said sum of Two Thousand ($2,000.00) Dollars be divided *by my said wife,* Mary A. Myers, among our children then living * * *." (Emphasis supplied.)

This imposed no duty upon the executors and there is no evidence that at any time there was a surplus over $2,000 above her living expenses and maintenance of the property, including taxes. Such part of the court's order as holds the executors liable to the estate for rents and penalties on taxes is therefore reversed.

V. In its decision the court charged the executors with $1,155.25 on account of interest paid on the mortgage from the rents, the reason being that the rents belonged to Mary A. Myers and the interest should not have been paid from such rents. Mary A. Myers was the life tenant. The property was subject to encumbrance. It was no part of her duty to pay off the principal of the encumbrance but it was her duty to keep up the interest. Trego v. Studley, 106 Iowa 742, 75 N. W. 179; Werner v. Dolan, 106 Iowa 355, 76 N. W. 724; 31 C. J. S. 63, section 48.

The mortgage of $10,000 had been reduced by the executors from the proceeds of the personal property of the estate to the sum of $4,000. It is true that the amount of the executors' obligations to the estate would have practically paid off the mortgage, but the court has already charged them with interest on such obligations so that they should not be required to pay interest also upon this mortgage, which would be, in effect, charging them twice with interest.

But in any event, any obligation for the payment of interest on the mortgage would not be in favor of the estate but in favor of the widow as life tenant. The primary obligation to pay the interest was on Mary A. Myers. Mary A. Myers cannot be held to be entitled to recover judgment in an action such as this, wherein the objections are made to the report of the executors. The judgment entered was for a grand total of $11,268.65, for which the court held the executors and their bondsmen liable. This judgment would not be in favor of individuals but in favor of the estate, and all that can be required would be that the executors or their bondsmen account to the estate for the amounts found to be due such estate. An individual judgment could not be rendered in this case. That part of the order allowing interest on the mortgage paid from rents is reversed.

VI. In its ruling the court found that the household goods of the value of $300 and a Buick automobile of the value of $200

had been turned over to the widow. The court charged Mary A. Myers with the $500 for the household goods and the automobile but held that it should be an offset to her claim for interest paid on the mortgage indebtedness by the executors out of the rents and profits from the real estate. The widow asserted when the husband died all the household goods went to her and that the Buick car was turned over to her and that it was hers. However that may be, since we have held that the executors cannot be held liable in this action for such rents, we cannot sustain this finding of the court. If Mrs. Myers is indebted to anyone it would be to the estate. So far as these executors are concerned, the item can be considered as uncollected. This ruling of the court is reversed.

VII. There is objection to the order of court in refusing to allow fees to the executors, and the refusal, which is presented in a separate appeal, to allow fees to Allen T. Percy, attorney for the executors, in excess of what has previously been allowed. We are not disposed to interfere with the judgment of the court in this respect. The affairs of the estate were handled, as many similar estates have been, by members of the family and by too many managers. There were the three executors, and in addition, Mr. Percy, who apparently did a great deal of clerical work both for the estate and for Mrs. Myers. The years during which the estate continued were strenuous ones; crop failures and drought resulted in less than normal returns, and we have no doubt in some instances misfortune as well as poor management entered into the conduct of the estate; but we think the court was justified in withholding fees.

As to Mr. Percy, while he did considerable work for the estate, he was, for a part of the time at least, also working for Mrs. Myers, and, in fact, for a period held a power of attorney from her for the conduct of her affairs. We see no sufficient reason for interfering with the rulings of the court in these respects and its orders as to fees will be affirmed.

VIII. W. C. Southwick, administrator with will annexed, and Mary A. Myers, appellees in the main action for accounting, have filed a cross-appeal therein, much of which has been considered in our discussion of the main cause.

The first three errors assigned refer to the rents and the computation thereof, the failure of the court to charge interest on rents, and allowance of a reduction on rentals, and allege double credit by the district court. Since we hold that the rents are not a part of this action so far as decedent's estate is concerned, we need consider these alleged errors no further.

. The fourth error assigned in the cross-appeal is as to the measure of damages in computing the value of grain converted by the executors. We do not think this was a conversion, but a sale at a price for which the executors accounted, and for which, by the decree of the court, they are held liable. Nor should we disturb the finding of the court by which the cross-appellants allege the court did not hold the executors liable for grain not accounted for. There was evidence that all the grain remaining on hand at the death of Mr. Myers was fed to the stock on hand, and this matter was fully considered by the court and we do not feel inclined to interfere with its finding.

For the sixth error, cross-appellants urge that the court should have held the executors liable for the wrongful payment of a claim of Dorothy McIntosh. There was evidence that Miss McIntosh was a nurse during the illness of deceased. The claim is based on a note dated May 19, 1931, signed by decedent by ''W. M. M.'' No one testified that the services for which the note was given were not rendered. Nor do we find in the objections to the report any specific claim that this item was not a valid claim and properly due from the estate, with the exception of the general statement that many of the disbursements as set out in the reports do not show what said disbursements were for and the objectors are unable to determine whether said disbursements are legitimate charges against said estate, and asking that the executors be held to strict proof on each and every disbursement. What testimony there was, was before the court, and the court properly determined that the claim, apparently for nursing services, was legitimate and therefore properly allowed by the executors.

The seventh error assigned by cross-appellants is that the court erred in not charging the executors the sum of $2,950.57, plus interest from January 12, 1933, on the note and mortgage of William M. Myers. This was a mortgage executed by William

M. Myers and wife on certain personal property in the sum of $4,000. The court found that aside from the admitted indebtedness of William M. Myers, already referred to, there was no note of any kind for this balance of $2,950.57. There was no note introduced in evidence but only the mortgage. This mortgage, however, was explained, and apparently to the satisfaction of the court, by William M. Myers, who said that his mother, Mary A. Myers, and his sister, Lenore I. Sulgrove, wanted it made for the protection of the estate. The court, after hearing all the testimony in connection therewith, held that it never was a valid indebtedness against William M. Myers, and that there was no financial consideration for the making of the mortgage, and said there was doubt if any note was ever made for this amount, but considered the fact that the maker was quite heavily involved and owed the estate on another note. With these findings of the court we agree, and feel that the only note for which there was actual consideration was the one for $1,049.43, dated April 25, 1932, and payable to the executors of the Benjamin F. Myers estate. The court was right in refusing any charge in relation to the mortgage against the executors or William M. Myers.

The question of the attorney's fees raised on cross-appeal has already been discussed in the main action and no further reference need be made thereto.

The findings and order of the court on the matters alleged in the cross-appeal are affirmed.

IX. There remains to be considered a claim for credit on the indebtedness of Paul M. Wolf, in the amount of $1,065.61. This payment on Wolf's indebtedness does not appear in the final report and is claimed to have been overlooked in the hearing on the objections to the final report. If this payment was actually made it is only just that it be allowed. It appears from the testimony of Mr. Percy, the attorney, that this amount had been paid to W. C. Southwick, the administrator with will annexed, about November 13, 1939, from the proceeds of Paul M. Wolf's sale, and under order of Judge Hays, together with an additional amount upon rent to Mary A. Myers of $973.99. This sale of the Wolf property had been held on February 9, 1938. These

518

transactions as to collection and payment were handled by Mr. Percy, as attorney and trustee, and such payment, if and as so made, would be a credit on the $1,379.55 note of Mr. Wolf, and with interest from the date of payment would reduce his indebtedness to the estate as the same appears in the intermediate reports of February 23, 1934, and April 25, 1939. It indicates that the final report as filed does not show all the credits. This claim for credit is made in appellants' reply argument, and is assailed by motion of appellees. Even if not shown by the final report, it is only fair and equitable that if such payment was made, credit therefor should be given. On remand, such credit for payment as is established should be given on the amounts charged against the executors in their official capacity. Appellees' motion is overruled, as is the further motion of appellees to strike appellants' amendment to abstract.

Appellees have filed motion to dismiss, alleging failure to serve notice on Allen T. Percy. So far as the main action is concerned, Mr. Percy would not be affected by this appeal. He is a party to an appeal from the disallowance of his claim for attorney's fees. On account of our disposition of this appeal, it is unnecessary to consider the motion further and it is overruled.

It appears from the record that nearly all of the vouchers relating to this estate have been lost or misplaced, so that they are not in evidence in the case. We are not determining where the fault lies for such failure to produce them, but we realize that the lack of these vouchers has caused great difficulty in presenting the case in the district court and a great deal of extra work for the district judge. Had the vouchers been accessible, no doubt the disposition of some of the objections could have been more readily accomplished; their loss rendered necessary the introduction of evidence which might not otherwise have been required.

This disposition of the case is without prejudice to any right of Mary A. Myers to recover from the executors individually any amount due her from any such executor.

We find it necessary to remand the case for further hearing in one respect—as to the question of the credit on the Paul M.

Wolf indebtedness of $1,065.61. In other respects the disposition of the objections to the final report of the executors is as set out in this opinion. The cause is therefore remanded for hearing and order on the credit alleged to be due Paul M. Wolf and for final ruling and order in accordance with the finding of this court as to such claimed credit and the disposition of the objections as shown herein.—Affirmed in part; reversed in part and remanded with directions.

All JUSTICES concur.