112 N.W.2d 858 (1962)
In the Matter of the ESTATE of Albert F. RAHFELDT, Deceased, W. H. Brown, Executor.
Florence SCHAPER, Helen Miller, Marguerite Mehlow, Albert Rahfeldt, Frances Kadolph, Charlotte Rahfeldt Erickson, and Fred A. Rahfeldt, Appellants,
v.
W. H. BROWN, Executor of the Estate of Albert F. Rahfeldt, Nellie Rahfeldt, Lydia Rahfeldt, William Rahfeldt, Robert Rahfeldt, Edward Rahfeldt, William Rahfeldt, Fern Stackhouse, Lorine Pille, Gladys Manful, Doris Myking, Lee Rahfeldt, Frank Rahfeldt, Gearde E. Gull, Lavaughn L. Bachman, Jessie W. Erickson, Appellees.
No. 50408.
Supreme Court of Iowa.
January 9, 1962.
*859 Lundy, Butler & Wilson, Eldora, for appellants.
Smedal & Maurer, Ames, for appellee W. H. Brown, Executor of the Estate of Albert F. Rahfeldt.
John R. Hattery, Nevada, for appellees Lydia Rahfeldt Gull, William Rahfeldt, Robert Rahfeldt and Edward Rahfeldt.
THORNTON, Justice.
This is an application in probate. The questions involved are, is the life tenant entitled to unmatured crops growing on the land at the time of the death of the testator, and are the facts such as will sustain the findings of the trial court in holding a declination to act as executor should not be set aside and the applicant appointed?
I. Albert F. Rahfeldt died a resident of Story County August 8, 1960. He left a will, dated January 22, 1945. In paragraph II of the will he devised a life estate to the applicant, Fred A. Rahfeldt, in a quarter section of farm land in part as follows:
"* * * to have and to hold and enjoy the use and income thereof for and during his natural life, and said Fred A. Rahfeldt shall pay all insurance, repairs, and taxes out of the income derived from said real estate, as the same shall become necessary, or due, as the case may be, and after his death, said real estate shall be sold and the net proceeds * * * distributed * * *."
The devise is one of an absolute life estate. There is nothing contained therein to indicate the testator intended the life tenant to have anything less than full possession and enjoyment of the quarter section commencing with the time of testator's death and ending on the death of the life tenant. Whitehill v. Whitehill, 211 *860 Iowa 475, 476, 233 N.W. 748; Milner v. Brokhausen, 153 Iowa 560, 133 N.W. 1068; and Miller's Executrix v. Miller, 310 Ky. 721, 221 S.W.2d 654, 656.
The will accomplished an equitable conversion, and passed to the remaindermen no right to possession of the real estate but only a right to the proceeds at the expiration of the life estate. In re Estate of Myers, 234 Iowa 502, 12 N.W.2d 211, 150 A.L.R. 254; and Holzhauser v. Iowa State Tax Commission, 245 Iowa 525, 62 N.W.2d 229.
The life tenant, Fred A. Rahfeldt, appellant here, and W. H. Brown were nominated as executors in the will. Mr. Brown qualified and as executor he took possession of 65 acres of growing and unmatured corn on the quarter section, and has refused to deliver the possession of the corn or its proceeds to the life tenant. The life tenant, joined by other interested parties, filed his application, urging the unmatured corn passed to him as a part of the real estate and asking the executor be required to account for the corn. The executor and other beneficiaries under the will filed answers. All admitted the corn was growing and unmatured. The beneficiaries affirmatively alleged the corn was personal property, and though the executor apparently took that position in the trial court, he did not so allege.
The trial court held the growing crop passed with title to the land and shall be the property of the remaindermen and required the executor to account to them for the corn.
An authority so holding has not been called to our attention, nor have we found any. In oral argument our attention was directed to this statement contained in 21 C.J., Estates, § 80, p. 945, "A life tenant is not entitled to crops planted prior to the beginning of the life estate." The same statement is found in 31 C.J.S. Estates § 40, p. 47, and in each is cited Glover v. Hearst, 31 S.C.Eq. 329. And in the 1961 pocket parts to 31 C.J.S. under the same footnote Miller's Executrix v. Miller, 310 Ky. 721, 221 S.W.2d 654, is cited. An examination of Glover v. Hearst, supra, discloses the testator died in the month of December, 1851, and the property received by the widow, life tenant, consisted of bacon, corn, oats, lard, fodder, etc. There is no suggestion a growing unmatured crop was involved. The opinion includes this statement, "To allow the estate of the tenant for life to retain the crop of the year when her estate commenced and that of the year in which she died, would be doubling the advantage intended by the Act of 1789 to life tenants." No part of the Act of 1789 is set out. The facts before the South Carolina court as well as the statute considered are different from those before us. If section 562.1, Code of Iowa, 1958, I.C.A., providing for apportioning rents for the year in which the life tenant dies, has any bearing here it would be contrary to the result reached in Glover v. Hearst, supra.
In Miller's Executrix v. Miller, supra, the widow was given a life estate in real and personal property. She was appointed executrix. Her husband died July 13, 1947. There was a corn crop growing on the real estate at that time. This crop was harvested and she fed it to livestock. The remaindermen protested the widow's right to feed this 1947 crop without accounting for its value to the estate. KRS 395.350(1) provides:
"(1) All the emblements of the lands of a person dying after March 1 which are severed before the following December 31 shall be assets in the hands of his personal representative."
In holding KRS 395.350 made growing crops personalty for the purpose of paying debts and charges of administration only and that the remainder must be distributed in accordance with the will of the testator, the court said:
"Mr. Miller's will created an absolute life estate in his widow in all the land on *861 which crops were growing at the time of his death. The will itself manifests an intention on the part of the testator to devise to his widow the use of the land from the time of his death until the happening of one of the contingencies which will terminate the life estate, viz., death or remarriage. Being entitled to the use of the land, she is entitled to the profits of the land from and after the death of the testator. To decide otherwise would be to deprive the life tenant of the absolute use of the real estate for the first year of her tenancy, and would postpone her enjoyment of the devise to a time not contemplated by the testator."
A growing corn crop is a part of the real estate and passes with the land as between vendor and purchaser, mortgagor and mortgagee, and by a will to a devisee. Clark v. Strohbeen, 190 Iowa 989, 994, 181 N.W. 430, 13 A.L.R. 1419; Newburn v. Lucas, 126 Iowa 85, 88, 101 N.W. 730; Hecht v. Dittman, 56 Iowa 679, 7 N.W. 495, 10 N.W. 241; and Downard v. Groff, 40 Iowa 597.
A tenant for life is the holder of a possessory estate in land, 1 Simes & Smith, Future Interests, 2nd Ed., § 62, p. 47, and during the continuance of the estate has the privilege of taking and receiving all issues, profits, and income from the land. Whitehill v. Whitehill, 211 Iowa 475, 476, 233 N. W. 748; Milner v. Brokhausen, 153 Iowa 560, 133 N.W. 1068; Miller's Executrix v. Miller, 310 Ky. 721, 221 S.W.2d 654; Croasdale v. Butell, 177 Kan. 487, 280 P.2d 593, 49 A.L.R.2d 1112; Perigo v. Perigo, 158 Neb. 733, 64 N.W.2d 789; 31 C.J.S. Estates § 41, p. 47; and Annotations, 13 Am.St.Rep. 633.
The doctrine of emblements urged by appellees is not applicable to a transfer from a fee simple title holder to a life tenant. As pointed out above unmature crops pass to the life tenant. The doctrine is applicable only to a tenant holding for a period subject to termination at a time which he cannot ascertain beforehand. 15 Am. Jur., Crops, §§ 24 and 25, pp. 216, 217.
The life tenant is the owner of the corn growing on the quarter section at the time of the testator's death.
II. Appellant contends the trial court erred in refusing to set aside his declination to serve as co-executor and in refusing to permit him to qualify.
These proceedings are in probate, review is not de novo, but on errors. If based on sufficient evidence the findings of the trial court are binding on us. In re Estate of Shivvers, 240 Iowa 93, 100, 34 N. W.2d 632; and In re Estate of Lorenz, 244 Iowa 338, 339, 56 N.W.2d 884.
Appellant claims he was misled by the statements made to him by the attorney for the co-executor. His testimony is that he talked with the attorney on August 19, 1960, a Friday, the attorney would not then give him a copy of the will because the other beneficiaries, applicant's brothers and sisters and their children, had not received copies. He was invited to come back the following day, Saturday, when the others would be present. He testified, "I didn't want to come on account of my brothers and sisters being there that day on Saturday." He did come to the attorney's office on Sunday. At that time he claims he was misled by the statements made to him by the attorney. The claimed statements are that Mr. Brown, the co-executor, would not serve if he did, that appellant had been 75% of the trouble, that his brothers would fight his appointment, and if you qualify you will have to hire an attorney, and the attorney then expressed his opinion that the attorney fees, if the appellant qualified, could not be paid from estate funds and that his (the attorney for the co-executor) firm could not represent appellant. The appellant further testified, "I studied it over a minute and I thought if it would cause that much trouble to protect my interest I would resign. * * * I believed Mr. Maurer when he told me all those things about which I have testified and relied on it. I would not have resigned if those statements had not been made to me." Appellant *862 testified Mr. Maurer had done all of his legal work in Iowa from 1934 until that time. Mr. Maurer agrees all the statements were made except the one about the co-executor.
The facts are not in dispute, but more than one reasonable inference can be drawn therefrom. One such inference is, that appellant signed the declination because he did not want further family trouble. The fact he did not want to meet with his family on Saturday shows this trouble was on his mind and could have well outweighed considerations of expense. He testified he relied on the statements and would not have resigned except for them, but he did not say it was because of the expense or lack of funds. He did mention, "* * * if it would cause that much trouble to protect my interest I would resign." It is true it is not necessary to make a case for a jury that the evidence be such as to show total reliance on any one factor. Doden v. Housh, 251 Iowa 1271, 105 N.W.2d 78. It is certainly clear there was family trouble and appellant was fully aware of it.
So viewed the evidence is such we cannot disturb the court's finding there was an insufficient showing to set aside the declination. As to the right to retract a renunciation or declination see Annotation, 153 A.L. R. 225.
III. The order of the trial court denying the application to set aside the declination to serve as executor and refusing to appoint Fred A. Rahfeldt co-executor is affirmed. The order directing the executor to account to the remaindermen is reversed and the trial court is directed to enter an order requiring the executor to account to the life tenant, Fred A. Rahfeldt, by delivery of the corn after the amount thereof has been determined if the executor still has possession of the corn, if he does not, the executor will account for the amount and value of the corn with interest at five per cent per annum from the date of the conversion. The costs are taxed three-fourths to the estate and one-fourth to the executor, W. H. Brown, in his individual capacity.
Affirmed in part, reversed in part, and remanded with directions.
All Justices concur, except BLISS, J., not sitting.